WILLIAM A. COMPTON *et al.*

*v.*

NANCY J. McCAFFREE *et al.*

*Opinion filed February 21, 1906.*

1. JUDICIAL SALES—*when re-sale is properly ordered.* A re-sale of premises for an advance of over $2000 is properly ordered where some of the complainants in the partition proceeding are minors, the bidders at the first sale failed to deposit the amount of their bid with the master until two days after the sale, during which time one of their number had acquired the interests of the others and furnished all the purchase money, and where the parties making the second bid, who were non-resident defendants to the partition suit and not represented by a resident attorney, were misled by not having notice of the date and terms of the first sale in time to protect their interests.

2. SAME—*when offer to indemnify minors against loss comes too late.* After a partition sale, in which minors are interested, has been set aside and a re-sale at an advance bid has been ordered, an offer to pay into court for the benefit of the minors the portion of the difference between the first and second bids which they would be entitled to receive comes too late, even if it could have been of any force had it been made before the re-sale was ordered.

3. PRACTICE—*exceptions by telegram are sufficient to base the amended exceptions upon.* A telegram to the clerk of the court, signed by counsel for the defendants to a partition suit, stating that the defendants objected to confirmation of the partition sale on the ground of inadequacy of price, and directing him to file the telegram, which was received and filed during vacation, is sufficient to authorize the court, upon convening, to grant leave to file amended exceptions.

APPEAL from the Circuit Court of McDonough county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

IRA J. O'HARRA, for appellants.

CHARLES W. FLACK, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of McDonough county for the partition of a 116-acre farm situated in said county, between the heirs-at-law of Samuel

Hushaw, deceased, who died seized in fee simple of said real estate. Two of the complainants were minors. The commissioners reported the farm could not be divided and appraised it at $11,600. A decree of sale was entered and the farm was sold to William A. Compton for himself and the other three appellants, by the master, for $9375. The defendants filed exceptions to the confirmation of the report of sale and asked that the sale be set aside and the premises resold, and deposited $1000 in cash with the clerk of the court as earnest money, and gave a bond in the sum of $12,000, conditioned that they, or some of them, would bid the sum of $11,600 for said farm and comply with the terms of the sale if the premises should be ordered re-sold. The defendants also deposited with the clerk, for the use of the appellants, the sum of $50 as their solicitor's fees, and $201.56 as interest upon the amount of their bid from the date of its deposit with the master to the date of the order directing a re-sale of the premises. Thereupon the court refused to confirm the report of sale, set aside the sale and ordered the premises re-sold, and an appeal has been prosecuted to this court.

While the evidence is conflicting as to the value of the farm, it fairly sustains the contention of the appellees that the premises sold for $2225 less than they were worth. It also appears that the defendants were all non-residents of the State of Illinois, their residence being at Emporia, in the State of Kansas; that they were not represented in the partition suit by a resident solicitor but were represented by a firm of lawyers residing in the city of Emporia; that their solicitors wrote the solicitor representing the complainants, to obtain information of the date and terms of the master's sale of said premises, but they were not informed by him of the date and terms of said sale, and the defendants did not learn of the date of the sale until five days after the sale had taken place. It also appears that Compton and the three other appellants entered into a combination to buy the premises at the master's sale upon speculation; that the sale took

place on Saturday, and that they did not comply with the terms of the sale by paying the amount of their bid to the master until on the following Monday, and not until after three of the parties in the combination had sold out, at a considerable advance over the amount of their bid, to the fourth, who appears to have been the only person in the combination who really desired to buy the farm and who furnished the money deposited with the master on Monday.

In the late case of *Kiebel* v. *Leick,* 216 Ill. 474, on page 475, it was said: "It is the policy of the law to give permanency and stability to judicial sales and to give to the purchaser the benefit of his bid, but there are cases in which such sale will be set aside even in the absence of fraud." And in *Sowards* v. *Pritchett,* 37 Ill. 517, on page 524: "It is a cherished object of courts to give stability to judicial sales, and at the same time, as far as possible, protect and guard the rights of the owner. In all such cases the chancellor is necessarily vested with a large discretion, and he must so exercise it as will promote justice and protect the rights of parties. And in the exercise of that discretion this court will not interfere if it seems to have been soundly exercised. We will only reverse when we can see, from all the circumstances, that wrong or injustice has been done." And again, in *Kiebel* v. *Leick, supra,* on page 476: "On an application to vacate a judicial sale the court should also take into consideration the fact, if shown, that the parties interested are under disabilities. Adults are able to bid for themselves or have others do so, and thus protect their rights and obtain the full value of their interests in premises sold. But not so as to infants. They are by their disability prevented from protecting themselves against loss. Courts of equity are the guardians of all infants within their jurisdiction, whose rights are under their special protection; hence a sale of real estate should be set aside where the interests of infants are involved, if the court can see that to refuse to do so will result in substantial and irreparable loss to them. In other

words, the policy of the law to give permanency to judicial sales should not be enforced contrary to the rights of infants or others under disability." And it is held the court may refuse to approve the sale of the land of a minor or other person under disability, upon its own motion, upon its attention being challenged to the fact that the property of its ward has been sold for an inadequate sum. (*McCallum* v. *Chicago Title and Trust Co.* 203 Ill. 142.) In the *Kiebel case,* the parties asking the re-sale offered to increase the bid ten per cent, while here the defendants offered to increase the bid more than twenty per cent. "If fraud or misconduct in the purchaser, or in the officer conducting the sale, or other persons connected therewith, be shown, or if the owner or party interested has been surprised or misled into a mistake by the conduct of the purchaser or by the officer or any person connected with the sale, such facts will be considered, together with the inadequacy of price, and the sale set aside, if in the sound discretion of the court it should appear to be for the best interests of the parties concerned." (*Kiebel* v. *Leick, supra; Wilson* v. *Ford,* 190 Ill. 614.) In *Miller* v. *McAlister,* 197 Ill. 72, on page 79, it was held: "Where the inadequacy is gross, the purchaser can retain his advantage only by showing that he acquired title by proceedings free from fraud or irregularity."

In view of the facts that the farm on a re-sale will bring at least $2225 more than it was sold for by the master; that the defendants were all non-residents and were misled by not learning of the terms and date of the sale in time to protect their interests; that the purchasers did not deposit the amount of their bid with the master on the day of sale, in accordance with the terms of the sale, but waited until the following Monday and until after three of them had sold their interest in the purchase to the fourth, who furnished all the purchase money paid to the master, and that two of the complainants were minors, we cannot say that the chancellor who heard the application to set aside the sale and ordered a

re-sale, and who was familiar with all the facts and circumstances surrounding the sale, abused the discretion vested in him in refusing to confirm the sale and in setting aside the sale and ordering a re-sale of the premises.

It is urged by the appellants that the exceptions, which were in the form of a telegram, as originally filed, were insufficient, and that the court erred in permitting amended exceptions to be filed. The telegram was addressed to the clerk of the court, who was requested to file the same. It gave the title of the case, and stated that the defendants objected to the confirmation of the sale on the ground of inadequacy of price, and was signed by counsel. It was received and filed during vacation, and upon the convening of court, by leave of court, amended exceptions were filed. "No particular form for such exceptions is prescribed." (*Kiebel* v. *Leick, supra.*) The exceptions, as originally filed, informed all parties in interest that the defendants objected to the confirmation of the sale, and were, we think, sufficient to authorize the court to permit the amended exceptions to be filed.

After the sale had been set aside and a re-sale of the premises decreed and an appeal prayed from that decree to this court and allowed, the appellants, to avoid the effect of the decision of this court in *Kiebel* v. *Leick, supra,* and other cases, sought to eliminate the question of the interests of the minor complainants in a re-sale of the premises by offering to pay into court for their benefit the difference between the rejected bid and the offer of the defendants. At the time the offer of the appellants was made the sale had been set aside and a re-sale of the premises ordered, and the offer came too late, if, under any circumstances, such offer could be of any force.

Finding no reversible error in this record the decree of the circuit court will be affirmed.

*Decree affirmed.*