WORLD SAVINGS AND LOAN ASSOCIATION, Plaintiff, v. AMERUS BANK, n/k/a Commercial Federal Bank, Defendant-Appellant (Min Suek Lee *et al.*, Defendants; Dorota Wasik, Third-Party Purchaser-Appellee).

First District (4th Division)   No. 1—99—1922

Opinion filed November 16, 2000.

Thomas Paul Beyer, of La Grange, and Karen R. Anderson, of Karen R. Anderson & Associates, of Chicago, for appellant.

Robert M. Gomberg, of Chicago, for appellee.

JUSTICE BARTH delivered the opinion of the court:

In this mortgage foreclosure action, defendant, AmerUs Bank, n/k/a Commercial Federal Bank (Commercial), appeals from orders of the circuit court which denied Commercial's motion to strike portions of the affidavit of the third-party purchaser-appellee, Dorota Wasik, and which confirmed the sale of the residence of defendants Min Suek Lee and Cindy Lee to Wasik. We affirm.

On April 24, 1998, plaintiff World Savings and Loan Association filed in the trial court a complaint seeking to foreclose on a mortgage which the Lees executed in the principal amount of $182,500. The complaint named the Lees and a secondary mortgagee, AmerUs Bank, Commercial's predecessor in interest, as defendants. The complaint alleged that the Lees defaulted on their mortgage installment payments

and that an outstanding principal balance of $161,865.59 remained. The complaint further identified Commercial as a secondary mortgagee in a mortgage securing notes for $74,300 and $60,000. Commercial submitted proof that, on these notes, unpaid principal balances of $69,520.88, and $56,030.95, respectively, remained due from the Lees.

On September 30, 1998, finding that the Lees had been properly served by publication, the trial court entered a judgment of foreclosure by default in the amount of $182,893.95. The judgment provided in pertinent part:

"[I]f the premises shall not be redeemed according to and within the time provided by law, *** then the real estate hereinabove described *** [shall] be sold at public vendue to the highest bidder by the Sheriff of the County wherein the property in question is located.

* * *

That said Sheriff upon making such sale, shall *** report the same to the Court for its approval and confirmation, and he shall likewise report the distribution of the proceeds of sale and his acts and doings in connection therewith; that he may accept plaintiff's receipt for its distributive share of the proceeds of sale in lieu of cash; that, in lieu of cash he may accept the receipt of any party to this proceeding found herein to have a lien on the property in question for said party's distributive share of the proceeds of sale for those amounts over and above the amounts due to Plaintiff ***."

The published notice of sale provided that the "[s]ale shall be under the following terms: Cash." The sale took place on March 9, 1999, at 12 p.m. According to the sheriff's report of sale, dated March 10, 1999, Wasik was the high bidder with a bid of $191,918.90. The report further states that the sheriff received payment from Wasik in the amount of the bid.

On April 6, 1999, plaintiff moved for an order confirming the sale to Wasik. Commercial opposed the confirmation of the sale on the grounds that the sale price was inadequate and that the sheriff failed to follow the terms of sale as provided in the judgment of foreclosure and the published notice of sale. Commercial submitted with its response to plaintiff's motion an appraisal dated April 13, 1999, which valued the subject property at $260,000. The appraisal report states that no inspection was made of the interior of the Lees' home.

Commercial also submitted the affidavits of Thomas Brennan, Erick J. Bohlman, and Crystal Zeigler. In his affidavit, Brennan stated that he is an employee of Commercial and that, on March 8, 1999, he wire transferred $26,970 to Superior Bank for deposit into the account of the law firm representing Commercial at the foreclosure sale.

In his affidavit, Bohlman stated that he was the attorney

representing Commercial at the foreclosure sale. While attending the sale, he learned that the funds which were the subject of the wire transfer had not yet been deposited into his firm's account. He obtained plaintiff's permission to bid without cash on hand provided that he obtained the cash before 5 p.m that day. At the sale, Bohlman submitted a bid on behalf of Commercial which turned out to be the highest bid. After the bidding, Bohlman advised the deputy sheriff conducting the sale that he did not have cash on hand and of his agreement with plaintiff. The deputy sheriff decided that this was unacceptable and held the sale over.

In her affidavit, Zeigler stated that she was an employee of Superior Bank and that the bank received the wire transfer from Commercial at 4:50 p.m. on March 8, 1999. The bank inadvertently delayed crediting the law firm's account until March 10, 1999.

Commercial also moved to strike portions of an affidavit in which Wasik described how she changed her position in reliance on her status as the high bidder at the sale. In the affidavit, Wasik stated that, in reliance on her successful bid, she contracted to sell her home on April 3, 1999, in anticipation of making the subject property her home. On April 6, 1999, she agreed to change the closing date for the sale of her home from June 4, 1999, to May 21, 1999.

At the April 22, 1999, hearing on the motions, plaintiff, Commercial, and Wasik stipulated that, after the deputy sheriff rejected the sale to Commercial, a second round of bidding took place. Wasik was the high bidder the second time. Immediately after the sale, Wasik put down a 10% deposit and paid the balance of the sale price the following day. The parties also stipulated that three other foreclosure sale notices appearing in the same publication as the notice in this matter stated the terms of sale as 10% cash down. There was an additional stipulation to admit photographs which tended to show the poor condition of the interior of the premises.

Also at the hearing, the deputy sheriff who presided over the sale testified that the formal policy of the sheriff's department is that a party purchasing property at a foreclosure sale must put down 10% of the sale price in the form of cash or a certified cashier's check at the time of the sale and must pay the balance within 24 hours. He further testified that, before every sale, he announces this policy to those present to bid on the property and that he made such an announcement before commencing the bidding on March 9, 1999.

The trial court denied Commercial's motion to strike the disputed portions of Wasik's affidavit because it believed that the facts asserted therein were relevant in addressing the equitable considerations arising as a result of the sale. In issuing its ruling regarding the confirmation of the sale, the trial court stated:

"Number 1, I would find that notice has been given. There has been nothing proven with regard to the sale being fraudulent of anything. No one has really alleged that.

I don't think that it is unconscionable ***.

*** Commercial is not a stranger to the world of mortgages. And I think that counsel for the plaintiff is correct that this is the procedure and it has been used. It has been the custom, as I understand it, for many, many years. And I think that Commercial knew it then.

The person came in and bid on it. Nothing tells me that she is not a bona fide purchaser, that there was anything fraudulently done or anything else to that effect.

\* \* \*

I think that in the balancing of the equities, the purchaser did sell her other house. She put herself in a great deal of peril ***.

Conversely, *** I don't see the damage to Commercial. I think that Commercial knows how to collect their money and I think they probably will."

Accordingly, the trial court entered an order which confirmed the sale and distribution of proceeds and awarded possession of the subject property to Wasik. In its written order, the trial court further found that "said Sheriff has proceeded in due form of law, and in accordance with the terms of the Judgment previously entered herein *** and that, the Sale was conducted pursuant to the Notice of Sale which was in proper form and published pursuant to the requirements of applicable law." This timely appeal followed.

On appeal, Commercial argues that the trial court abused its discretion in confirming the sale. In connection with this general argument, Commercial also contends that the trial court committed reversible error by admitting and considering evidence that Wasik sold her home in reliance on her status as the successful bidder at the sale. Finally, Commercial argues that the actions of the deputy sheriff who conducted the sale and the subsequent action of the trial court in confirming the sale had the effect of depriving Commercial of its interest in the subject property without due process of law.

■ Section 15—1508 of the Illinois Mortgage Foreclosure Law (Mortgage Foreclosure Law) governs the confirmation of a foreclosure sale and provides in relevant part:

"(b) Hearing. Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15—1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted

fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale ***.

(c) Failure to Give Notice. If any sale is held without compliance with subsection (c) of Section 15—1507 of this Article, any party entitled to the notice provided for in paragraph (3) of that subsection (c) who was not so notified may, by motion supported by affidavit made prior to confirmation of such sale, ask the court which entered the judgment to set aside the sale, provided that such party shall guarantee or secure by bond a bid equal to the successful bid at the prior sale. ***

(d) Validity of Sale. Except as provided in subsection (c) of Section 15—1508, no sale under this Article shall be held invalid or be set aside because of any defect in the notice thereof or in the publication of the same, or in the proceedings of the officer conducting the sale, except upon good cause shown in a hearing pursuant to subsection (b) of Section 15—1508." 735 ILCS 5/15—1508 (West 1998).

A court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown which is prejudicial to an interested party. *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 927 (1997) (*Espinoza*). Trial courts have broad discretion in approving or disapproving sales made at their direction. *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d 385, 388 (1997).

Commercial's first contention on appeal is that the trial court should not have confirmed the sale because the sale did not conform to the terms set forth in the judgment of foreclosure and the published notice of sale. According to Commercial, by allowing Wasik to pay 10% of the sale price at the time of the sale and the balance within 24 hours, the deputy sheriff violated the judgment of foreclosure, which Commercial contends provided only for a strictly cash sale, with a limited exception for lienholders.

■ Section 15—1507(b) of the Mortgage Foreclosure Law directs that "the real estate shall be sold at a sale *** on such terms and conditions as shall be specified by the court in the judgment of foreclosure." 735 ILCS 5/15—1507(b) (West 1998). Where an order of the court directs the manner of the sale of real estate, the officer making the sale derives his authority to do so from the order of the court alone. *Moore v. Sievers*, 336 Ill. 316, 322 (1929). It is his duty to conform to the court order, and, unless he follows the directions of the order or decree, his acts will be set aside. *Barnes v. Swedish American National Bank*, 371 Ill. 20, 28 (1939); *Ehrgott v. Seaborn*, 363 Ill. 292, 296 (1936).

■ The judgment of foreclosure provides that, if the Lees failed to redeem the subject property within the prescribed time limits, then

the property would "be sold at public venue to the highest bidder." The judgment further provides in essence that the sheriff may accept from any party with a lien on the property their receipt for their "distributive share of the proceeds of sale in lieu of cash."

A review of the entire judgment of foreclosure reveals that there is no specific requirement of a cash sale. At best, the language just quoted suggests that the judgment contemplated a cash sale. Neither the judgment nor the published notice of sale contains a specific requirement that the successful bidder must tender the full sale price in cash on the day of the sale.

*Ehrgott* provides a useful example of the type of deviation from the court order which would provide cause for setting aside a judicial sale. There, the successful bidder appealed from an order setting aside the sale to him. The terms of sale required a cash payment of either the entire sale price or one-third of the sale price on the day of the sale, with the remaining balance plus 6% interest due one year after sale, as the purchaser may elect. The successful bidder tendered less than one-third of his bid on the day of the sale. The reviewing court held that, because the officer conducting the sale had no authority to accept less than one-third of the sale price, the trial court acted within its discretion in setting aside the sale. *Ehrgott*, 363 Ill. at 296.

The court in *Ehrgott* cited *Compton v. McCaffree*, 220 Ill. 137 (1906). The *Compton* court held that, where the terms of sale required that the entire sale price be paid in cash on the day of the sale, the purchaser's failure to tender the cash payment until two days after the sale, when combined with other irregularities, was a substantial departure from the terms of sale which would warrant the trial court's disapproval. *Compton*, 220 Ill. at 140-41.

In both *Ehrgott* and *Compton*, there were clear departures from sale terms which specifically required the purchasers to tender a certain amount of cash on the day of the sale. The foreclosure judgment in this matter contains no such requirement. Thus, the trial court reasonably could have concluded that, by accepting 10% of the sale price from Wasik at the time of the sale and the remaining balance within 24 hours, the sheriff did not violate any of the terms of the judgment of foreclosure. In deciding this issue, the trial court was interpreting its own order and was therefore in a better position to determine whether the deputy sheriff complied with its terms.

Also, the trial court reasonably could have concluded that the deputy sheriff correctly held over the sale upon learning that Commercial did not have cash on hand at the time of the sale. As we have noted, the judgment of foreclosure could be interpreted as contemplating a cash sale of some sort. Although Commercial represented that it would

have cash available by 5 p.m. that day, the record does not reveal that there were any assurances that this would be the case. In fact, the record reveals that the cash in question did not become available until the following day.

Moreover, by arranging for a wire transfer of only $26,970, Commercial clearly did not make preparations to pay the full amount of its bid on the day of the sale, as it contends was the requirement. The trial court reasonably could have concluded, therefore, that the deputy sheriff's actions in ultimately accepting the bid of Wasik, who had cash on hand, over the bid of Commercial, which had no cash on hand, did not result in unfair prejudice to Commercial.

Commercial contends that the better procedure to avoid unfairness under the circumstances would have been for the deputy sheriff to adjourn the sale and seek guidance from the trial court regarding the propriety of accepting only a 10% cash payment. The problem with this contention is that the deputy sheriff's actions did not constitute a departure from the terms of the judgment of foreclosure or the notice of sale. To give a party in Commercial's position the ability to delay a sale any time the order does not directly address an issue which arises at the sale could have serious implications for the orderly administration of judicial sales.

Admittedly, the judgment of foreclosure here is not a model of clarity. Had the judgment contained more specific terms of sale like the orders in *Ehrgott* and *Compton,* this dispute could have been avoided. In any event, the circumstances surrounding this sale did not give rise to irregularities which would have required the trial court to set it aside.

Commercial makes additional assertions regarding the trial court's finding that none of the factors set forth in section 15—1508(b) of the Mortgage Foreclosure Law were present here. In connection with the notice factor in section 15—1508(b)(i), it contends that, if the sheriff's alleged unilateral change in the terms of the sale is allowed, then the notice of sale would thereby be rendered defective, as the notice did not provide for terms of 10% down at the time of the sale with the remaining balance to be paid within 24 hours.

Section 15—1507(c)(1)(G) of the Mortgage Foreclosure Law requires that the notice of sale contain, among other things, the terms of the sale. 735 ILCS 5/15—1507(c)(1)(G) (West 1998). That subsection also provides, however, that an "immaterial error in the information shall not invalidate the legal effect of the notice." 735 ILCS 5/15—1507(c)(1) (West 1998). Also, pursuant to section 15—1508(d), Commercial cannot establish that the sale was invalid merely by asserting that the notice did not contain the specific terms of sale.

Instead, it must show "good cause" for setting aside the sale. *Cragin Federal Bank For Savings v. American National Bank & Trust Co.*, 262 Ill. App. 3d 115, 120 (1994). Because the deputy sheriff in essence conducted a cash sale, the trial court reasonably could have concluded that the terms of sale as stated in the notice contained no material errors sufficient to invalidate its legal effect.

Commercial claims that the failure of the notice of sale to mention the specific terms was material. According to Commercial, potential bidders, some of whom may have been willing to bid more than the ultimate sale price, may have interpreted the terms of sale as requiring a full cash payment at the time of the sale and, unable to meet such a requirement, were discouraged from attending.

The burden of having the full purchase price on hand for the sale is not materially greater than the burden of having to pay the full purchase price within 24 hours of the sale. Thus, the trial court reasonably could have concluded that the possibility that the claimed deficiency in the notice would materially affect the outcome of the sale or the rights of an interested party was remote and speculative and that this did not constitute "good cause" for setting aside the sale.

In connection with its claim that the terms of the sale were unconscionable under section 15—1508(b)(ii), Commercial argues that, because of the inadequate sale price and other irregularities surrounding the sale, the trial court abused its discretion in confirming the sale. The purchase price of a property at a foreclosure sale is one of the "terms of sale" as that phrase is used in the statute. *Berkeley Properties, Inc. v. Balcor Pension Investors II*, 227 Ill. App. 3d 992, 999 (1992). Commercial acknowledges that, in the absence of mistake, fraud or violation of duty by the officer conducting the sale, mere inadequacy of price is not a sufficient reason to disturb a judicial sale. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 114 (1993). This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss. *First Bank & Trust Co. v. King*, 311 Ill. App. 3d 1053, 1059 (2000); *Resolution Trust Corp.*, 248 Ill. App. 3d at 114.

Here, the trial court reasonably could have concluded the actual value of the subject property was not as high as reflected in the appraisal. The appraiser made no inspection of the interior of the premises, and the report therefore did not account for the poor condition of the interior as reflected in the photographs which Wasik submitted at the confirmation hearing. There is no requirement that foreclosed property be sold for its appraised value, which may or may

not reflect the price that could be obtained upon sale of the property. *Illini Federal Savings & Loan Ass'n v. Doering*, 162 Ill. App. 3d 768, 773 (1987).

Moreover, when compared to the $260,000 appraised value, the sale price of $191,918.90 was not " 'so grossly inadequate that it shocks the conscience of a court of equity.' " *Resolution Trust Corp.*, 248 Ill. App. 3d at 113, quoting *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 288 (1937). For example, in *Espinoza*, the court affirmed the trial court's refusal to confirm the sale where the mortgagee's successful bid was only one-sixth of the appraised value of the property and there was evidence that the mortgagee treated the mortgagor unfairly when she attempted to pay the amount required to claim her property. *Espinoza*, 293 Ill. App. 3d at 927-28. No such alarming disparity in price exists here.

Even if the sale price could be considered inadequate, it does not appear that the trial court abused its discretion in concluding that no other irregularities were present which would justify setting aside the sale. As we stated earlier, the manner in which the deputy sheriff conducted the sale did not prejudice Commercial.

Commercial makes additional assertions in connection with its general claim that "(iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done." 735 ILCS 5/15—1508(b)(iii), (b)(iv) (West 1998). It argues that the trial court committed reversible error by admitting and considering evidence that Wasik sold her home in reliance on her status as the successful bidder at the sale.

Commercial correctly notes that a judicial foreclosure sale is not complete until the trial court confirms it. *BCGS, L.L.C. v. Jaster*, 299 Ill. App. 3d 208, 212 (1998). The highest bid at a judicial sale is merely an irrevocable offer to purchase the property, and acceptance of the offer takes place when the court confirms the sale. *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 300 (1995). Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense. *Citicorp Savings*, 269 Ill. App. 3d at 300.

According to Commercial, under these principles, the sale to Wasik was not complete and was contingent upon the trial court's confirmation. Thus, any preconfirmation action Wasik may have taken in reliance upon her successful bid was not reasonable.

We agree that Wasik should not be able to strengthen her position relative to other interested parties through her unilateral actions before confirmation. Because the deputy sheriff rejected the sale to Commercial and initiated a second round of bidding, Wasik should have known that a challenge to the sale was likely. Accordingly, we believe that the trial court's consideration of the disputed evidence regarding the sale of Wasik's residence was improper.

The trial court's consideration of this evidence does not warrant a reversal here, however. It does not appear that the trial court considered the information in Wasik's affidavit as conclusively establishing her right to have the sale confirmed. It was merely one factor which the trial court considered when it balanced the equitable considerations arising in this matter.

It is proper for a trial court to balance the hardship that would result to a third-party bidder if the sale is not confirmed against the hardship which would result to other interested parties if the sale to the third-party bidder is confirmed. *Fleet Mortgage Corp.*, 287 Ill. App. 3d at 390. Here, the trial court could consider that Wasik intended to make the subject property her residence, the hardship that would result to her if the sale were not confirmed, and the fact that none of the claimed irregularities in the administration of the sale were attributable to her.

The trial court considered the potential hardship to Commercial if the sale were confirmed but found that any such hardship was mitigated because Commercial could attempt to recover the debt from the Lees through other means. The hardships which Commercial and the Lees allegedly have suffered are a natural result of any sale to a third-party bidder. The cause of these claimed hardships was an inadvertent delay in the posting of a deposit and not any improper conduct in connection with the sale. Thus, the trial court properly concluded that the sale to Wasik did not result in any injustice to Commercial or other interested parties.

Finally, we address Commercial's due process claim. According to Commercial, by following its own customary procedure, the sheriff unilaterally changed the terms of sale as stated in the judgment of foreclosure and the published notice without providing the interested parties notice or an opportunity to be heard.

Procedural due process rules serve to protect persons from the mistaken or unjustified deprivation of life, liberty, or property. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415 (1997). The fundamental requirements of due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Quantum Pipeline Co. v. Illinois Commerce Comm'n*, 304 Ill. App. 3d 310, 320 (1999). The notice must be reasonably calculated to apprise interested parties of the contemplated action and to afford them an opportunity to present their objections. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432 (1990).

There is no dispute that Commercial possessed a recognizable property interest in the subject real estate. If, as Commercial claims,

both the judgment of foreclosure and the published notice of sale required a full cash payment at the time of the sale, then Commercial received adequate notice of what it needed to do to protect its interest in the property. As we noted earlier, Commercial did not even make arrangements to satisfy this purported requirement because it arranged to have only $26,970 available on the day of the sale. If anything, the deputy sheriff's alleged change in the terms of sale relaxed the requirements and thus benefitted Commercial. For this reason, Commercial is not a position to complain that procedural unfairness resulted when the deputy sheriff rejected its bid for failure to have cash on hand and accepted Wasik's bid after a 10% cash down payment.

Neither the actions of the deputy sheriff nor those of the trial court deprived Commercial of a reasonable opportunity to be heard. Commercial had an opportunity to present its arguments at the confirmation hearing, before the final adjudication of its rights in the property. As Commercial recognizes, until the trial court confirms it, the sale is not final. Therefore, this is not a situation where the actions of the sheriff's department had the effect of unilaterally depriving Commercial of its property rights without notice or an opportunity to be heard.

For these reasons, we find that the trial court did not abuse its discretion or violate Commercial's due process rights when it confirmed the sale to Wasik. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and SOUTH, J., concur.