FLEET MORTGAGE CORPORATION, f/k/a Mortgage Associates, Inc., Plaintiff-Appellee, v. JAMES W. DEALE *et al.*, Defendant (REM Properties, Inc., Intervenor-Appellant).

First District (3rd Division)    No. 1—95—2225

Opinion filed March 12, 1997.

Steven B. Brashaw, of McBride, Baker & Coles, of Chicago, for appellant.

Rosemary B. Kopriva, Michael Walsh, and Elizabeth T. Sewruk, all of Shapiro & Kreisman, of Northbrook, for appellee.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal from a trial court order vacating the mortgage foreclosure sale of certain property to intervenor-appellant REM Properties, Inc. (REM). The facts are undisputed. Plaintiff-appellee Fleet Mortgage Corporation, the mortgagee, filed a complaint seeking to foreclose a mortgage executed by defendants James and Annie Deale, the mortgagors, alleging that the Deales defaulted on their mortgage installment payments. On November 17, 1994, the trial court entered a judgment of foreclosure by default against the Deales. That order expressly provided that the right of the Deales to redeem the judgment amount would expire on March 27, 1995. A mortgage foreclosure sale was then scheduled for March 28, 1995.

On March 24, 1995, prior to the foreclosure sale, the Deales sold the subject property for the sum of $35,000 to third-party purchasers William Mable, Jr., and Emma Lee Cashaw. On March 27, 1995, on the last day of the redemption period, the Deales tendered to Fleet the total amount of the mortgage foreclosure judgment, which Fleet accepted in full payment. No prior notice of the Deales' intention to redeem was served upon the mortgagee as required by statute. See 735 ILCS 5/15—1101 et seq. (West 1994) (set forth and discussed more fully below).

Notwithstanding its acceptance of the redemption payment from the mortgagors, Fleet failed to cancel the mortgage foreclosure sale scheduled for the next day. As a result, the foreclosure sale proceeded as scheduled on March 28, 1995. At that sale, Fleet bid the outstanding balance on the mortgage owed by the Deales, $18,993.90, an amount including statutory fees and costs. Intervenor-appellant REM Properties bid one dollar more, $18,994.90, and was declared the

highest bidder. REM accordingly tendered its payment for the property and received a receipt of sale and a certificate of sale verifying its purchase. On April 20, 1995, Fleet filed a motion to vacate the foreclosure sale to REM, and in opposition, REM filed a petition to intervene and to confirm that sale pursuant to section 15—1508(b) of the Illinois Mortgage Foreclosure Law (the Act) (735 ILCS 5/15—1508(b) (West 1994)) (set forth and discussed below).

Thereafter, on May 24, 1995, the trial court sustained Fleet's motion to vacate the foreclosure sale and, while granting REM leave to intervene, denied REM's petition to confirm the sale, stating as follows:

> "Here it would be unfair and inequitable to let the sale stand. Although the Defendants did not properly notify the parties of their redemption, they did tender the funds to the Plaintiff, which were accepted on the last day of redemption. As such, it should be noted that equity abhors a forfeiture. We would be allowing the technicality by virtue of the failure to comply with the strict rules of redemption to bar these parties from their rightful interest in this property. Therefore, the sale should be vacated and the motion to confirm the sale will be denied."

REM now appeals from that order. For the reasons that follow, we affirm.

DISCUSSION

■ The pertinent provisions of the Illinois Mortgage Foreclosure Law are as follows. With respect to the notice required of the Deales to be given to Fleet, the Act provides as follows:

> "§ 15—1603. Redemption ***
>
> * * *
>
> (e) **Notice of Intent to Redeem.** An owner of redemption who intends to redeem shall give written notice of such intent to redeem to the mortgagee's attorney of record specifying the date designated for redemption and the current address of the owner of redemption for purposes of receiving notice. Such owner of redemption shall file with the clerk of the court a certification of the giving of such notice. The notice of intent to redeem must be received by the mortgagee's attorney at least 15 days *** prior to the date designated for redemption." 735 ILCS 5/15—1603(e) (West 1994).

With respect to the judicial confirmation of a mortgage foreclosure sale by the trial court, the Act provides as follows:

> "§ 15—1508. Report of sale and confirmation of sale ***
>
> * * *
>
> (b) **Hearing.** Upon motion and notice in accordance with court

rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15—1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15—1508(b) (West 1994).

■ A judicial foreclosure sale is not complete until it has been approved by the trial court. *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 645 N.E.2d 1038 (1995). The highest bid at a judicial sale is merely an irrevocable offer to buy the subject property, the acceptance of which does not take place until the court confirms the sale, before which there is no true sale in any legal sense. *Citicorp*, 269 Ill. App. 3d 293, 645 N.E.2d 1038. Moreover, a court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown which is prejudicial to an interested party. See 735 ILCS 5/15—1508(b) (West 1994); *Citicorp*, 269 Ill. App. 3d 293, 645 N.E.2d 1038. Trial courts have broad discretion in approving or disapproving sales made at their direction. See generally *Blancett v. Taylor*, 6 Ill. 2d 434, 128 N.E.2d 916 (1955); *Citicorp*, 269 Ill. App. 3d 293, 645 N.E.2d 1038; *In re Application of Rosewell*, 236 Ill. App. 3d 473, 603 N.E.2d 753 (1992).

On appeal, REM contends that the trial court abused its discretion provided by section 15—1508(b) of the Act when it determined that justice would not be done if it were to confirm the foreclosure sale. In support, REM argues that if there was any injustice, it was done to REM, which innocently bid and paid for the subject property solely because of the negligence of the Deales and of Fleet in failing to take steps to cancel the foreclosure sale. We disagree.

The case of *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 645 N.E.2d 1038 (1995), is squarely in point. In *Citicorp*, pursuant to the mortgagor's failure to make an installment payment, the trial court entered a judgment of foreclosure and sale. Thereafter, the mortgagor's statutory right to pay the late installment and to thereby reinstate the mortgage expired. Nevertheless, the mortgagee informed the mortgagor that reinstatement would be permitted on an agreed-upon date and that any mortgage foreclosure sale would be postponed until after that date. However, prior to that rescheduled, later date, the mortgagee mistakenly proceeded with a foreclosure sale of the subject property to a third party. The trial court refused to confirm the sale because the mortgagee had promised the mortgagor that no foreclosure sale would take place prior to the

agreed-upon date. Although the trial court denied the petition of the third-party bidders to formally intervene, it ordered the mortgagee to return their foreclosure sale payment to them. The third-party bidders appealed, contending that they should have been given leave to intervene and that the foreclosure sale should have been confirmed.

On appeal, the *Citicorp* court held that the appellant should have been given leave to intervene, but nonetheless affirmed the refusal of the trial court to confirm the foreclosure sale. In so holding, the court stated that the third party's bid at the foreclosure sale prior to the confirmation thereof was merely an irrevocable offer that need not be confirmed if unfairness would result. The court concluded:

> "[I]t would not be in the interests of justice for the court to have confirmed the sale of the property after Citicorp [the mortgagee] affirmatively represented to the Fronteras [the mortgagors] that a sale would not take place." *Citicorp*, 269 Ill. App. 3d at 300-01.

As in *Citicorp*, here, Fleet represented to the Deales that no foreclosure sale would take place by virtue of its acceptance of their full redemption payment within the redemption period and prior to the date on which the foreclosure sale was scheduled. Moreover, unlike the facts in *Citicorp*, where a mere promise by the mortgagee to accept a late mortgage payment sufficed as grounds to refuse to confirm the judicial sale, here, the mortgagee actually accepted full payment during the redemption period prior to any foreclosure sale. Thus, the holding in *Citicorp* applies all the more strongly to the facts in this case.

■ Contrary to the contentions of REM (the third-party bidder at the foreclosure sale in this cause), this result does not conflict with the policy behind the Illinois Mortgage Foreclosure Law. We recognize and acknowledge the need to promote stability in the conduct of a judicial sale. See *Abbott v. Beebe*, 226 Ill. 417, 420, 80 N.E. 991, 992 (1907), quoting *Conover v. Musgrave*, 68 Ill. 58, 62 (1873) (" 'Public policy requires stability in all judicial sales and that they should not be disturbed for slight causes. To do so would impair that confidence so essentially necessary to induce persons to become purchasers when real estate is offered for sale under a judgment or decree of a court' "). However, that policy cannot be given ascendancy over the articulated purpose of the Illinois Mortgage Foreclosure Law to protect the equity of a mortgagor by permitting mortgage redemptions prior to forced sales and thereby to protect against the forced sale of property at prices well below fair market value. See 84th Ill. Gen. Assem., House Proceedings, June 26, 1986, at 60-61 (Representative Greiman stating that one purpose of the Illinois Mortgage Foreclosure Law is to preserve the equity of borrowers in their real estate purchases). See

also W. Bender & S. Lindberg, *The Illinois Mortgage Foreclosure Law*, 76 Ill. B.J. 800 (1987) (stating that one of the purposes of the Act is to protect a borrower's equity from sales costs after judgment to enable a redemption); E. Freyfogle, *The New Judicial Roles in Illinois Mortgage Foreclosures*, 19 Loy. U. Chi. L.J. 933 (1988); C. Gnatek, *The New Mortgage Foreclosure Law: Redemption and Reinstatement*, 1989 U. Ill. L. Rev. 471, 491 (stating that the role of courts was expanded under the Act in order to, among other things, protect mortgagors from inequitable foreclosure sale prices); J. Liss, *Introduction to the Proposed Illinois Mortgage Foreclosure Act*, 9 The Illinois Fund Concept of the Attorneys' Title Guarantee Fund 13, 14 (1985) (stating that purpose of the redemption provisions of 1987 Illinois Mortgage Foreclosure Law is to put the real estate back on the market as quickly as possible, but only after it is clear that the mortgagor cannot redeem).

Here, the trial court did not refuse to confirm the foreclosure sale because of a belated attempt to redeem after the occurrence of a sale and after the period of redemption had expired. Rather, here, the redemption took place with the concurrence of the mortgagee, before the foreclosure sale was conducted and before the period of redemption had expired. The mortgagee here merely neglected to make adequate provisions to cancel the subsequently scheduled judicial sale. Consequently, we find no fault with the trial court's exercise of its discretion to disaffirm the sale, thereby giving ascendancy to the protection of the mortgagors' right to redeem their property under the statute over that of the bidder at an erroneously conducted judicial sale. In that regard, while not of itself dispositive, we note that the relative prejudice to the bidder at the judicial sale from the cancellation of its advantageous bid on the subject property at one dollar over the mortgage balance of $18,993.90 is more than countervailed by the prejudice that would ensue to the mortgagors if the foreclosure sale were to have been confirmed. Such confirmation would have effectively nullified the mortgagors' mortgage redemption and their preceding commercial sale of the property for $35,000, almost twice the amount of the highest bid at the judicial sale.

REM relies on the decisions of *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 618 N.E.2d 418 (1993), *Uptown Federal Savings & Loan Ass'n v. Vasavid*, 94 Ill. App. 3d 531, 418 N.E.2d 831 (1981), and *Uptown Federal Savings & Loan Ass'n v. Walsh*, 15 Ill. App. 3d 626, 305 N.E.2d 74 (1973), in support of its contention that the vacatur of the foreclosure sale contravenes the public policy of lending stability and permanency to judicial sales. However, those cases are not in point. In *Holtzman*, the trial court failed to conduct

an evidentiary hearing to determine whether justice was done in a judicial sale where the sale price was alleged to have been unconscionably low in view of appraisals done prior thereto. In *Vasavid,* the court affirmed the confirmation of a foreclosure sale where the party wishing to vacate that sale did nothing despite its knowledge prior to the sale that a foreclosure sale was imminent and despite its actual presence at that sale. In *Walsh,* the court affirmed the confirmation of a foreclosure sale where the only contention on appeal was an unsupported claim that the purchase price was too low and no allegations of unfairness were made. Unlike the facts in those cases, here, the focus is not on the sufficiency of the bidding that took place at the judicial sale but, rather, upon the undisputed fact that the Deales completed their redemption by agreement with the mortgagee before the sale took place. Moreover, unlike the facts in REM's cases, here the trial court indeed conducted a hearing to consider the conflicting equities involved before making its ruling, and consequently there is specific support for Fleet's contention that unfairness would result to the Deales if the foreclosure sale were to be confirmed.

REM further contends that the Deales' strict compliance with the notice requirements of section 15—1603(e) of the Act was required and that the trial court had no authority to ignore or judicially amend those statutory requirements by vacating the foreclosure sale. This contention is wholly lacking in merit. The beneficiary of the notice requirements of section 15—1603(e) would appear to be the mortgagee, to whom notice of any intent to redeem is required. See 735 ILCS 5/15—1603(e) (West 1994). In any event, the Act does not preclude the mortgagee from waiving compliance with those requirements as Fleet did here when it accepted the Deales' redemption payment despite the lack of notice. See *Citicorp,* 269 Ill. App. 3d 293, 645 N.E.2d 1038 (where mortgagee agreed to permit mortgagor to reinstate beyond the expiration of the statutory time period during which reinstatement was permissible).

REM relies on the decisions of *First Federal Savings & Loan Ass'n v. Walker,* 91 Ill. 2d 218, 437 N.E.2d 644 (1982), and *Evergreen Savings & Loan Ass'n v. Barnard,* 65 Ill. App. 3d 492, 382 N.E.2d 467 (1978), in support of its contention that the trial court may not ignore the Deales' failure to satisfy the notice requirements of section 15—1603(e) of the Act. However, those cases are fully consistent with our holding in this case. In *Walker* and in *Barnard,* the courts stated, *inter alia,* that only mortgagees are permitted under the Act to allow borrowers to make payments on their mortgages where the statutory right to do so has expired, and that the trial court itself cannot attempt to dispense with the timeliness requirement without the ap-

proval of the mortgagee. Unlike those cases, here, Fleet voluntarily waived the notice requirement and permitted the Deales to redeem their mortgage despite the absence of notice, and the trial court cannot be said to have independently excused the Deales from satisfying that requirement.

REM also contends that Fleet has no standing to assert any potential injustice to the Deales that would result if the foreclosure sale were to be confirmed in favor of REM. We disagree. As noted, section 15—1508(b) of the Act expressly provides that the trial court may refuse to confirm a foreclosure sale where "justice was otherwise not done." 735 ILCS 5/15—1508(b) (West 1994). Hence, the trial court is expressly required to consider the interests of all parties before ruling on a petition to confirm a foreclosure sale. As noted by the court in *Citicorp*, a "court is justified in refusing to approve a judicial sale if unfairness is shown which is prejudicial to *an* interested party." (Emphasis added.) *Citicorp*, 269 Ill. App. 3d at 300. In that case, as here, the party whose interest was asserted by the mortgagee-appellee was not that of the appellant but, rather, was that of the mortgagor, who as noted had been promised the right to make a reinstatement payment and that no foreclosure sale would take place. Hence, Fleet's standing to make the argument that it would be unfair to the Deales if the foreclosure sale were to be confirmed is entirely consistent with the role that such interests play in any determination of whether to confirm a mortgage foreclosure sale.

REM nevertheless contends that the trial court abused its discretion in vacating the foreclosure sale because Fleet and the Deales should not be excused from their own negligence in failing to take steps to cancel the foreclosure sale. In support, REM relies on the decisions of *Abbott v. Beebe*, 226 Ill. 417, 80 N.E. 991 (1907), and *Grubert v. Cosmopolitan National Bank*, 269 Ill. App. 3d 408, 645 N.E.2d 560 (1995). However, those cases are fully distinguishable. *Abbott* involved a partition sale of a certain parcel of property which could not be fairly divided among the group of individuals who had jointly inherited that property from their deceased cousin. Although fully aware that the property would be sold at a judicial sale, the heirs made no effort to delay the sale or to otherwise facilitate an increase in the prices that were bid. Thereafter, on motion of the heirs, the trial court refused to confirm the sale by reason of the low bids. The *Abbott* court disagreed, stating that a low bid in and of itself would not suffice to defeat a judicial sale, especially where the heirs had notice of the sale but did nothing to prevent its outcome.

However, *Abbott* did not involve a mortgage foreclosure and therefore did not invoke any issues regarding a mortgagor's redemp-

tion rights. In *Abbott*, the parties did not dispute the right to conduct a judicial sale but, rather, simply challenged the adequacy of the price offered by the successful bidder. In contrast, here, we must confront the right of the mortgagors to redeem their property prior to any judicial sale during the redemption period, despite the fact that the mortgagee neglected to thereafter cancel the scheduled judicial sale. As previously pointed out, under these circumstances, the trial court was well within the latitude of its discretion in refusing to confirm the sale after balancing the conflicting equities involved.

Although *Grubert* does involve a mortgage foreclosure, it is nevertheless readily distinguishable as well. There, the mortgagee foreclosed on a mortgage and then offered the highest bid at the subsequent foreclosure sale. The trial court confirmed that sale to the mortgagee but *sua sponte* reduced the mortgagee's bid on the grounds that the parties purportedly had agreed on such a reduction to reflect rent and interest obligations of the mortgagor relating to the property. The *Grubert* court reversed, stating that the trial court should have conducted a hearing to determine whether the reduction of the bid reflected in its order accurately reflected the agreement of the parties.

In this case, as contrasted with *Grubert*, the trial court in reaching its determination was required to balance the mortgagors' right to redeem their mortgage against the competing interest of the bidder at the judicial sale. In *Grubert*, there were no such competing interests involved, in that no redemption was attempted, and the sale was therefore properly conducted. Thus *Grubert* only involved a question of whether the trial court had unilateral authority to modify a bid without first establishing an agreement between the parties as to the propriety of its reduction. Here, on the other hand, the trial court was well within the latitude of its discretion to favor on balance the right of the mortgagor to redeem its mortgage within the period of redemption over the right of a bidder to retain the benefits of a judicial sale that should never have gone forward in the first instance but for the error of the mortgagee in failing to cancel it. Therefore, neither *Abbott* nor *Grubert* offers meaningful support to REM's contentions.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

COUSINS, P.J., and McNULTY, J., concur.