2022 IL App (2d) 200235-U
No. 2-20-0235
Order filed January 14, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| U.S. BANK N.A., as Trustee for the Holders of the WAMU Mortgage Pass-Through Certificates, Series 2007-HY5, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CH-1579 |
| TERRENCE O'MALLEY, DEBRA O'MALLEY, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, | ) ) ) ) ) | Honorable James D. Orel, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not abuse its discretion in confirming the judicial sale of the property at issue.  Therefore, we affirmed.

¶ 2    In this residential mortgage foreclosure proceeding, defendants, Terrence and Debra O'Malley, appeal the order of the circuit court of Du Page County confirming the sale of their residence in favor of U.S. Bank, N.A. (U.S. Bank).  On appeal, defendants argue that the circuit court abused its discretion in confirming the sale because the sale price was unconscionable and

the loan servicer incorrectly informed defendants that the sale date would be postponed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On May 10, 2013, U.S. Bank filed its foreclosure complaint regarding defendants' residence located at 30 Breakenridge Farm in Oak Brook (the property). U.S. Bank alleged that defendants executed a mortgage and note on the property on March 12, 2007, but that they had been in default since October 1, 2012. The original indebtedness was $2,280,000. A copy of the mortgage and note were attached to the complaint. U.S. Bank alleged the unpaid principal balance was $2,117,942.12. In June 2013, defendants were served with the summons and complaint and appeared through counsel. On December 12, 2013, defendants filed an answer and affirmative defenses. On March 5, 2019, after extensive litigation, the circuit court entered a judgment of foreclosure and sale. The judgment of foreclosure is not at issue in this appeal. Defendants' right to redeem the mortgage expired on May 6, 2019.

¶ 5       The date of the judicial sale of the property was postponed several times due to the parties' various loss mitigation efforts, which ultimately were unsuccessful. The sale was initially scheduled for May 14, 2019, but the sale was canceled and rescheduled for August 20, 2019. The sale was again canceled, and a new sale was scheduled for October 31, 2019. The final notice of sale in the record was sent to defendants' counsel on October 9, 2019, and states that the property would be sold on October 31, 2019, at 10 a.m. As reflected in the proofs of service, plaintiff sent notice of each sale date to defendants' counsel of record. On October 31, 2019, the Du Page County sheriff continued the sale to December 5, 2019. On December 5, 2019, nearly seven months after the sale was originally scheduled, the sheriff conducted a judicial sale of the property. U.S. Bank emerged as the highest bidder on the property, having bid $1,899,000.

¶ 6    On January 23, 2020, U.S. Bank filed a motion to confirm the sale, and it attached a sheriff's report of sale and distribution, two certificates of publication, a receipt of sale, and a certificate of sale.

¶ 7    On February 4, 2020, defendants filed an "opposition" to the motion to confirm pursuant to section 15-1508(b) of the Illinois Mortgage Foreclosure Law (the Foreclosure Law) (735 ILCS 5/15-1508(b) (West 2018)). They raised two arguments. First, they asserted that the sale price was unconscionable because the York Township Assessor had recently assessed the fair cash value of the property to be $2,499,990, and the "As-Is List Price" reflected on the appraisal obtained by U.S. Bank was $2,305,000. Defendants noted that the bid was "$600,990 less than the fair cash value of the Assessor and *** $406,000 less than Plaintiff's 'As-Is List Price.' " Second, defendants argued that confirming the sale would be unjust because a representative from U.S. Bank's loan servicer, Select Portfolio Servicing, Inc. (SPS) told Mr. O'Malley of the December 5, 2019, sale date but incorrectly informed him that it would be postponed pursuant to his request because of his efforts to modify the loan and mortgage. Defendants alleged that, in reliance on SPS' statement, they paid $2600 "to maintain the heating system" at the property and devoted "time and resources into reducing the assessed value of the home so that the real estate taxes were lowered by $1,500 per month." They attached a "Request for Mortgage Assistance" that they sent to SPS on December 16, 2019, as well as a December 19, 2019, letter from SPS confirming receipt of "correspondence from [defendants]." Defendants asserted that SPS subsequently informed Mr. O'Malley that he was ineligible to modify the loan because the property had already been sold. Defendants also attached a "verification" executed by Mr. O'Malley consistent with the allegations in the opposition to U.S. Bank's motion.

¶ 8     On February 11, 2020, U.S. Bank filed its reply in support of its motion to confirm. It argued that there was no basis to vacate the sale because, in the absence of any fraud or irregularity in the proceedings, the sale price alone was not grounds for the circuit court to disallow the sale. U.S. Bank attached an appraisal that valued the property between $2,105,000 and $2,305,000. It also argued that the value assessed by the assessor was less reliable than the formal appraisal it had received. It asserted that, even if the assessor's valuation was accepted, the sale price was not so measurably different as to be unconscionable. U.S. Bank also asserted that the issue of whether defendants believed the sale would be postponed was irrelevant because no loss mitigation efforts were pending at the time of sale and defendants did not allege that they received inadequate notice under the Foreclosure Law.

¶ 9     On February 25, 2020, after hearing argument from the parties, the circuit court found that defendants failed to establish a basis for it to refuse to confirm the sale under section 15-1508(b), and it entered an order confirming the sale. It observed that the litigation had been ongoing for nearly seven years, and that "loss mitigation was offered numerous times" but was not pending when the sheriff conducted the sale. It also stated that if the proceedings were stayed, substantial *per diem* interest would continue to accrue and the case "could go on forever" without the property receiving a bid that would satisfy defendants. The court then turned to defendants' allegation that, in the court's words, "some servicer, unnamed, allegedly said the sale isn't going forward." It noted that defendants were represented by counsel, and it found that notice was proper under the Foreclosure Law because the "new date was presented at the stay of the sale" on October 31, 2019. The court also rejected defendant's assertion that the sale price was unconscionable, and it stated that the winning bid was "over 80 percent of what is argued is the assessed value."

¶ 10    Defendants timely filed a notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    Defendants appeal the circuit court's order granting U.S. Bank's motion to confirm the sale under section 15-1508(b) of the Foreclosure Law.  Although they acknowledge that approval of a judicial sale is generally reviewed for an abuse of discretion, they cite *City of Champaign v. Torres*, 214 Ill. 2d 234 (2005), for the proposition that we should review *de novo* whether the circuit court erred in not holding an evidentiary hearing because, according to defendants, the issue turns on questions of statutory construction.  They do not dispute that abuse of discretion is the appropriate standard of review applicable to the circuit court's ultimate ruling on a motion to confirm.  We are unpersuaded by defendants' reliance on *Torres*, which did not involve any type of foreclosure proceeding but instead concerned section 31-1 of the Criminal Code of 1961 (720 ILS 5/31-1 (West 2002)), which makes it illegal to obstruct the performance by a peace officer of any authorized act within the officer's official capacity. *Torres*, 214 Ill. 2d at 242. *Torres* is inapposite, and we decline to review *de novo* whether the circuit court should have held an evidentiary hearing.

¶ 13    Our supreme court has stated that "[t]he provisions of section 15-1508 have been construed as conferring on circuit courts broad discretion in approving or disapproving judicial sales." *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008).  It is well settled that the standard of review for a motion to confirm a judicial sale is an abuse of discretion. *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 31.  Similarly, a circuit court's decision to deny a motion to vacate is reviewed for an abuse of discretion. *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 5 (2006).  Indeed, the appellate court has reviewed the denial of an evidentiary hearing under section 15-1508 for an abuse of discretion.  See *Deutsch Bank National Trust Co. v. Cortez*, 2020 IL App (1st) 192234, ¶ 17 (applying abuse of discretion standard and holding that an evidentiary hearing was needed regarding status of mortgagor's loan modification); *Lewis*, 2014 IL App (1st)

131272, ¶ 43 (finding no abuse of discretion where the defendant was denied an evidentiary hearing concerning notice requirements); *Burtley*, 371 Ill. App. 3d at 5 (reviewing circuit court's decision to deny mortgagee's motion to vacate sale without an evidentiary hearing for an abuse of discretion). Consistent with these principles, we will review the circuit court's rulings for an abuse of discretion. A circuit court abuses its discretion if it committed an error of law or where no reasonable person would take the view adopted by the court. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 14    On appeal, defendants contend that the circuit court erroneously confirmed the sale of the property without an evidentiary hearing under section 15-1508(b) of the Foreclosure Law for two reasons. First, they assert that the difference between the sale price and the "fair cash value" as determined by the York Township Assessor's office was so great as to be unconscionable. Second, they argue that justice was not done because the circuit court ignored Mr. O'Malley's assertion that SPS misrepresented that the December 5, 2019, sale would be "postponed pursuant to his request because he was continuing in his attempts to modify the *** loan and mortgage." As to both issues, defendants maintain that an evidentiary hearing was required under section 15-1508 and was necessary "to resolve the disputed issues and make a determination as to the value of the home."

¶ 15    A judicial foreclosure sale is not complete until it has been approved by the circuit court. *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 300 (1995). The highest bid received at a judicial sale is merely an irrevocable offer to purchase the subject property, the acceptance of which occurs when the court confirms the sale. *Id*. A court is justified in refusing to confirm a judicial sale if unfairness is shown which is prejudicial to an interested party. See

735 ILCS 5/15-1508(b) (West 2018); *Citicorp Savings*, 269 Ill. App. 3d at 300; *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d 385, 388 (1997).

¶ 16    Confirmation of judicial sales is governed by section 15-1508(b) of the Foreclosure Law. It provides, in pertinent part:

> "(b) Hearing.  Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale.  Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was not otherwise done, the court shall then enter an order confirming the sale."  735 ILCS 5/15-1508(b) (West 2018).

The Foreclosure Law provides that when the word "shall" is used, it means "mandatory and not permissive."  *Id.* § 15-1105(b).  As our supreme court has stated, section 15-1508 imposes a mandatory obligation on a court "to (a) conduct a hearing on confirmation of a judicial sale where a motion to confirm has been filed and notice has been given, and, (b) following the hearing, to confirm the sale unless it finds that any of the four specified exceptions are present."  *Lewis*, 229 Ill. 2d at 178.  The burden is on the party opposing confirmation to prove that sufficient grounds exist to disapprove the sale.  *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 48.  It is well settled that "mere inadequacy of price is not a sufficient reason to disturb a judicial sale unless there were some other irregularities."  *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 263 (2008).

¶ 17    We conclude that the circuit court did not abuse its discretion in confirming the sale.  At the outset, we note that, contrary to defendants' argument, section 15-1508(b) imposes no

obligation on the circuit court to hold an evidentiary hearing whenever a party requests one after a motion to confirm is filed. Rather, this section "was intended to create a new, but limited, level of inquiry of foreclosure sales and was not intended to require an evidentiary hearing after each sale." *Sewickley, LLC v. Chicago Title Land Trust Company*, 2012 IL App (1st) 112977, ¶ 29. The extent of the hearing the circuit court must provide to a mortgagor or other interested party depends on the circumstances (*Fankhauser*, 383 Ill. App. 3d at 264) and is left to the sound discretion of the circuit court (*Sewickley*, 2012 IL App (1st) 112977, ¶ 29)).

¶ 18    Defendants, in arguing that the $1,899,000 sale price was unconscionable, rely on a recent assessment by the York Township Assessor's office, which concluded that the fair cash value of the property was $2,499,000. Defendants also stress that the "As-Is List Price" reflected on the appraisal was $2,305,000. Just like at the hearing on the motion to confirm, defendants assert on appeal that the difference in sale price, in terms of raw dollars, reflects "such a great disparity in the prices to be unconscionable." They point out that the highest bid received at the sheriff's auction is "$600,990 less than the fair cash value of the Assessor" and "$406,000 less than the 'As-Is' List Price."

¶ 19    We reject defendants' argument that the sale price was so low as to warrant an evidentiary hearing. When determining the extent of the hearing to be afforded to the mortgagor, the circuit court looks to the defendant's motion, and "if there is an allegation of a current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable, then a hearing should be afforded the defendant." *Fankhauser*, 383 Ill. App. 3d at 264 (quoting *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993).

¶ 20    It is well recognized that it is unusual for land to bring its full, fair market value at a forced sale." *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 20. There is no requirement

that a foreclosed property must be sold for its appraised value, which may or may not reflect the price that could be obtained following a judicial sale. *First Bank & Trust Co. v. King*, 311 Ill. App. 3d 1053, 1059 (2000). While courts cannot guarantee that a mortgaged property will bring its full value, they can prevent "unwarranted sacrifice" of a debtor's property. *NAB Bank*, 2013 IL App (1st) 121147, ¶ 20. In the absence of fraud or other irregularity in the foreclosure proceeding, the conclusive value of a property is the price at which it is sold. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35. "This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." *World Savings & Loan Ass'n v. Amerus Bank*, 317 Ill. App. 3d 772, 780 (2000). Judicial sales are presumptively valid, and the burden is on the mortgagor to demonstrate why the sale price is unconscionable. *T2 Expressway, LLC v. Tollway, L.L.C.*, 2021 IL App (1st) 192616, ¶ 26.

¶ 21    Here, the record includes an appraisal of the property that was obtained just a few weeks before the judicial sale. Defendants note that the "As-Is List Price" stated on the appraisal is $2,305,000. However, the appraisal also provides a "30 Day As[-]Is" valuation of $2,105,000. These figures appear under a heading titled "Marketing Strategy" and suggest that the value of the property as determined by the appraiser ranged between $2,105,000 and $2,305,000. It is uncontroverted that the sale price of $1,899,000 is between approximately 82% to 90% of the appraised value. This plainly does not reflect an unconscionably low sale price. See *Burtley*, 371 Ill. App. 3d at 8 (courts may disapprove a judicial sale where the amount bid is so grossly inadequate that it shocks the conscience of a court of equity). Even accepting the indicia of the property's value noted in defendants' briefs that is most favorable to them, which is the assessment

by the York Township Assessor, the sale price obtained at auction represents approximately 76% of the assessed value—which does not even approach a threshold for unconscionability. See *T2 Expressway*, 2021 IL App (1st) 192616, ¶ 29 (observing that while there is no established percentage of fair market value below which a sale is unconscionable, recent caselaw suggests that a sale price below 50% of the fair market value is a reasonable threshold for unconscionability).

¶ 22   Defendants are at pains to emphasize the difference between the sale price and the above metrics in terms of raw dollars and assert that the discrepancy, which in their view ranges from $406,000 to $600,990, is unconscionable. For example, they cite *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 915 (1997), where the appellate court ruled that the disparity between the sale price of $10,800 and the appraised value of $69,000 was unconscionable. Defendants emphasize that the difference between the amounts in *Espinoza* was $58,200, and they suggest that if this disparity was unconscionable, so too must be the case in the instant matter. Defendants also cite *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925 (1997), where we found that the asserted value of the property, $400,000, was so measurably different from the sale price of $200,000, as to be unconscionable. During the hearing on the motion to confirm, defendants emphasized that "the difference [in *Roberts*] is $200,000."

¶ 23   Although there is no requirement that the difference between the estimated fair market value and sale price should be evaluated in terms of either raw dollars or a percentage, the appellate court recently rejected a similar argument in *T2 Expressway*, 2021 IL App (1st) 192616, ¶ 28. There, the court explicitly found that "sale price as a percentage of the fair market value [is] the more proper method for determining unconscionability." In so ruling, the court stated that "it is common sense that a multimillion-dollar property *** will result in a greater difference in absolute dollars, even if sold for a higher percentage of the fair market value, compared to a property with

a lower fair market value." *Id.* The court also rejected as "misleading and disingenuous" the defendant's comparison of "the difference in absolute dollars with cases involving properties worth substantially less than the [p]roperty at issue." In light of the substantial value of the property here at issue, we find the court's reasoning in *T2 Expressway* compelling, and it applies with equal force here. Although a difference of approximately $600,000 between the assessed value and the sale price is sizable in terms of absolute dollars, the property nevertheless sold for, at worst, 76% of its assessed value. This percentage indicates that the sale price is not unconscionable.

¶ 24    Defendants next argue that the circuit court should have refused to confirm the sale because "justice was not otherwise done" pursuant to section 15-1508(b)(iv) of the Foreclosure Law. They argue that, in confirming the sale, the circuit court "ignor[ed] the misrepresentation made by *** SPS," as well as "disregard[ed] O'Malley's objections concerning the statement," such that the circuit court "merely focus[ed] on the sale price" in granting the motion to confirm.

¶ 25    Section 15-1508(b)(iv) of the Foreclosure Law does not specify the circumstances that constitute an injustice, but our supreme court has stated this section "appears to merely codify the long-standing discretion of the courts of equity to refuse to confirm a judicial sale." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 19. To vacate a sale based on an injustice, the defendant must demonstrate "that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defense to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests." *Id.* ¶ 26.

¶ 26    Contrary to defendants' assertion, the circuit court was engaged throughout the hearing, it entertained robust argument from the parties on the issues raised in defendants' motion, and it

plainly considered the substance of defendants' arguments and Mr. O'Malley's verified statement. In addressing the assertion that an SPS employee informed Mr. O'Malley that the sale would be postponed, the circuit court noted that counsel had represented defendants since October 2018 and was "well aware of what's going on in this case," and that notice of sale was served on counsel in compliance with the Foreclosure Law.

¶ 27    Notably, defendants do not argue that the notice required by section 15-1507(c) was not provided.  See section 15-1508(b)(i) (providing that the circuit court shall confirm the foreclosure sale unless it finds that the notice required by section 15-1507(c) was not given).  If a sale is not in compliance with the applicable notice requirements, any party entitled to notice "who was not so notified may, by motion supported by affidavit made prior to confirmation of such sale, ask the court which entered the judgment to set aside the sale."  735 ILCS 5/15-1508(c) (West 2018). Section 15-1507(c) requires two types of notice: public notice and individual notice to all parties who have appeared and are not in default.  *Id*. §§ 15-1507(c)(2), (3); *Lewis*, 2014 IL App (1st) 131272, ¶ 37.  Concerning individual notice, "[s]uch notice shall be given in the manner provided in the applicable rules of court for service of papers other than process and complaint, not more than 45 days nor less than 7 days prior to the day of sale."  735 ILCS 5/15-1507(c)(3) (West 2018). Supreme Court Rule 11 (eff. July 15, 2020) governs the manner of serving documents other than process and complaint on parties not in default.  It provides: "[i]f a party is represented by an attorney of record, service shall be made upon the attorney.  Otherwise service shall be made upon the party."  *Id*.  Thus, the Foreclosure Law required that notice of the sale to be sent to defendants' counsel, as attorney of record—not defendants.

¶ 28    At the hearing, defendants' attorney confirmed that he received notice of the October 31, 2019, sale date, but he asserted that "no notice [was] given to [him] that the sale was postponed to

December 5, 2019." However, the circuit court correctly determined that no additional notice was required because the October 31, 2019, sale was adjourned and continued to December 5, 2019, which was less than 60 days later. See section 15-1507(c)(4) (the party who gives notice of the public sale need not re-notice any adjourned sale "if the adjourned sale is to occur less than 60 days after the last scheduled sale" and the new sale date is announced upon adjournment).

¶ 29    Defendants rely on *Citicorp Savings*, 269 Ill. App. 3d 293 (1995), but that reliance is misplaced. There, the statutory right of the mortgagors to reinstate expired on October 25, 1992, and a sheriff's sale was scheduled for March 10, 1993. *Id*. at 295. Notwithstanding the sale date and the expiration of the mortgagors' right to reinstate, Citicorp sent the mortgagors' attorney correspondence stating that it would accept either a payoff or reinstatement payment until March 15, 1993, and it included specific figures for each payment. *Id*. It also represented to the attorney that the sale date would be moved to March 16. On March 12, 1993, three days before the deadline stated in the letter, the mortgagors' attorney sent checks to Citicorp sufficient to reinstate the mortgage. *Id*. However, the sale occurred on March 10 as originally scheduled, and Citicorp refused to accept the checks. *Id*. The circuit court refused to confirm the sale, reasoning that the property was sold by mistake because Citicorp had agreed in the letter to give the borrowers until March 15 to reinstate. *Id*. at 295-96. The appellate court affirmed, reasoning that it would have been unfair and prejudicial to the borrowers if the sale had been confirmed given Citicorp's representation that the sale would be postponed and "took place only by mistake." *Id*. at 300-01. The appellate court explained that, even though the parties should have moved to vacate the order setting the sale date for March 10, "it would not be in the interests of justice for the court to have confirmed the sale of the property after Citicorp affirmatively represented to the [borrowers] that a sale would not take place." *Id*.

¶ 30    *Citicorp* is readily distinguishable from the instant matter.  Unlike in *Citicorp*, there is no indication that defendants wished or intended to either reinstate the loan or redeem the mortgage, and there is no indication in the record that defendants were promised that they could reinstate at a later date.  The mortgagors in *Citicorp* detrimentally relied on Citicorp's incorrect statements and, as a result, they were unable to redeem the mortgage prior to the judicial sale—even though they had gathered and sent the funds necessary to reinstate the mortgage prior to the stated deadline.  Conversely, here, the only prejudice alleged by defendants is that, in reliance on SPS' representation, they spent "approximately $2,600 to maintain the heating system" and devoted "time and resources into reducing the assessed value of the home."  Defendants do not allege that they planned to bid on the property at the judicial sale, nor do they allege that they were prevented from raising a meritorious defense or were otherwise prevented from protecting their property interests.  See *McCluskey*, 2013 IL 115469, ¶ 26.

¶ 31    Moreover, as noted by the circuit court, defendants' various loan modification and loss mitigation requests were all denied, and the period within which defendants could appeal those decisions had elapsed by the time of the sale.  Notwithstanding defendants' nonspecific allegation that Mr. O'Malley was "working to modify [the] loan and mortgage" at the time of the judicial sale, the circuit court's conclusion that no application for loss mitigation was then pending is reasonably supported by the record.  Notably, the record contains a "Request for Mortgage Assistance" application completed by defendants bearing a date of December 16, 2019, which was 11 days after the property was sold.  Defendants contend in their reply brief that the assertion that that there were no loss mitigation efforts pending at the time of the judicial sale, as found by the circuit court, is untrue.  However, other than Mr. O'Malley's nonspecific statement that he had "been working to modify [the] loan and mortgage," defendants do not identify anything in the

record to support the assertion that loss mitigation efforts were ongoing at the time of sale. Even otherwise, they cite no authority to suggest that confirmation should be refused where the mortgagor has applied for a loan modification with the lender, as opposed to the lender having actually entered into a loan modification agreement. See *Cortez*, 2020 IL App (1st) 192234, ¶ 25 (holding that an evidentiary hearing was necessary to determine whether the parties had entered into a loan modification agreement, because confirming the sale when such an agreement is in place would be inequitable). Defendants make no argument that they had entered into a loan modification agreement with SPS or U.S. Bank.

¶ 32    Because the Foreclosure Law, by way of Supreme Court Rule 11, required that notice be sent to defendants' attorney, rather than directly to defendants, any misstatement by SPS concerning the sale date, even if proved at an evidentiary hearing, would not provide a basis to find an abuse of discretion in confirming the sale—especially where defendants (1) were in no position to redeem the property, (2) did not allege that they wished to attend the sale or bid on the property, and (3) did not allege cognizable prejudice, only that they had made a relatively modest outlay of money to maintain the property's heating system and expended time appealing the property tax assessment.

¶ 33                                        III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 35    Affirmed.