# Illinois Official Reports

## Appellate Court

---

### *T2 Expressway, LLC v. Tollway, L.L.C.*, 2021 IL App (1st) 192616

---

| | |
|---|---|
| Appellate Court Caption | T2 EXPRESSWAY, LLC, a Delaware Limited Liability Company, Plaintiff-Appellee, v. TOLLWAY, L.L.C., an Illinois Limited Liability Company; TOLLWAY INDUSTRIAL CENTER LIMITED PARTNERSHIP, an Illinois Limited Partnership; GEORGE A. MOSER; GEORGE M. MOSER; DOUGLAS C. ALTENBERGER; MURPHY & HOURIHANE, L.L.C.; and UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | First District, First Division<br>No. 1-19-2616 |
| Filed | June 28, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CH-14978; the Hon. Daryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David K. Welch and Brian P. Welch, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellants Tollway LLC, Tollway Industrial Center Limited Partnership, George A. Moser, George M. Moser, and Douglas C. Altenberger.<br><br>No brief filed for other appellants. |

Edward F. Malone, of Barack Ferrazzano Kirschbaum & Nagelberg LLP, of Chicago, for appellee.

Panel                    PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion.
Justices Hyman and Coghlan concurred in the judgment and opinion.


**OPINION**

¶ 1    T2 Expressway, LLC (Plaintiff) made a loan to Tollway, L.L.C. (Tollway), that was secured by a mortgage against real property owned by Tollway. Plaintiff commenced a foreclosure action against Tollway, Tollway Industrial Center Limited Partnership (TICLP), George A. Moser (George A.), George M. Moser (George M.) and Douglas C. Altenberger (Altenberger) (collectively, Defendants). The circuit court entered a judgment of foreclosure and sale. Plaintiff subsequently purchased the mortgaged property at the Sheriff's sale. Defendants filed a motion for discovery and evidentiary hearing arguing that the sale price generated at the auction was "unconscionable, grossly inadequate, inequitable and justice was not done." The circuit court confirmed the sale. Defendants then filed a motion to reconsider, which the circuit court denied. Defendants appeal both orders of the circuit court and request this court to reverse and remand for discovery and an evidentiary hearing. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    On October 10, 2014, Plaintiff made a loan in the original principal amount of $3 million to Tollway. In March 2016, TICLP (collectively with Tollway, Borrowers) became an additional borrower under the operative loan documents. The loan was secured by a mortgage against real property located at 2305 Pembroke Avenue, Hoffman Estates, Illinois (Property). The Property is comprised of approximately 11 acres of vacant land and includes four double-sided billboards constructed on the Property (Billboards).

¶ 4    The loan was guaranteed by George A., George M., and Altenberger (collectively, Guarantors). The loan was amended four times between December 2014 and April 2016 to extend additional credit to the Borrowers, resulting in the total principal under the loan totaling $4,4 million.

¶ 5    On November 9, 2017, Plaintiff commenced the underlying foreclosure action. On December 12, 2017, Plaintiff filed its first amended verified complaint for foreclosure and other relief (complaint). In the complaint, Plaintiff alleged various causes of action and theories of recovery against Defendants. Count I sought foreclosure of mortgage against Tollway, judgment lien holder Murphy & Hourihane, L.L.C., unknown owners, and nonrecord claimants. Count II sought foreclosure of liens and security interests in personal property against Tollway, Murphy & Hourihane, L.L.C. unknown owners, and non-record claimants. Count III alleged breach of promissory note against the Borrowers. Count IV alleged breach of guaranty against the Guarantors. Plaintiff sought to foreclose upon the mortgage; terminate

- 2 -

junior liens, encumbrances, and/or alleged subordinate mortgages against the property; and enter a deficiency judgment against the Borrowers. Plaintiff also sought a money judgment against the Guarantors for the purported breach of their obligations under various guaranty documents.

¶ 6     On January 30, 2018, Plaintiff filed a verified motion to appoint receiver. On October 16, 2018, Adam Firsel (Firsel) was appointed receiver for the Property.

¶ 7     On October 26, 2018, Defendants filed a response denying the material allegations of the complaint. On December 10, 2018, Plaintiff filed a motion for judgment on the pleadings.

¶ 8     Prior to the hearing on the motion for judgment on the pleadings, Tollway filed a petition for bankruptcy. On February 1, 2019, the circuit court stayed the proceedings as to Tollway, defaulted unknown owners, nonrecord claimants and Murphy & Hourihane, and granted Plaintiff's motion only as to TICLP and the Guarantors. On March 29, 2019, Tollway dismissed its bankruptcy motion, and the automatic stay was lifted. On April 15, 2019, the circuit court entered judgment on the pleadings against Tollway.

¶ 9     On June 7, 2019, the circuit court entered a judgment of foreclosure and sale in the amount of $6,440,056.75, plus additional amounts and costs. On July 24, Plaintiff purchased the Property for $3.5 million at the Sheriff's sale.

¶ 10    On August 2, 2019, Plaintiff filed a motion to confirm sale. In the motion, Plaintiff sought the entry of an order approving the sale and a deficiency judgment against the Defendants in the amount of $3,124,256.84.

¶ 11    On September 5, 2019, Defendants filed a combined motion for discovery and evidentiary hearing and response to plaintiff's report of sale and distribution for order of possession and deficiency judgment (combined motion and response). Defendants argued that the sale price generated at the auction was "unconscionable, grossly inadequate, inequitable and justice was not done." Defendants claimed that a contemporaneous appraiser's opinion showed the Property was worth between $5.5 and $6.5 million, and other indicia of value supported the conclusion that the Property was worth more than $6.5 million. Defendants requested that the circuit court deny the motion to confirm sale and allow discovery and an evidentiary hearing into the adequacy of the sale.

¶ 12    Gary K. DeClark (DeClark), the principal and managing director of Valbridge Property Advisors—Chicago Metro (Valbridge), submitted an affidavit providing his opinion on the value of Property. Defendants attached his affidavit to the combined motion and response. In the affidavit, DeClark testified that he holds an appraiser's general certification from the State of Illinois, has been a real estate appraiser for 39 years, has personally inspected the Property, and has knowledge of the market value of the Property and similar properties. DeClark testified that as of July 24, 2019, the market value of the Property, incorporating both land and billboard components, was between $5.5 and $6.5 million. DeClark added that an appraisal report was being prepared to set forth an estimate of value.

¶ 13    Defendants also attached a copy of a Purchase and Sale Agreement (Shout PSA) between Tollway and Shout Outdoor Media, LLC (Shout) dated September 7, 2018. Shout agreed to pay Tollway $3.6 million for the sale of Billboards, but the sale was conditioned upon the approval of the Plaintiff, as the secured lender.

¶ 14    Finally, Defendants attached a copy of a marketing proposal relating to the Property prepared by CBRE. In the marketing proposal, CBRE concluded that the value of the vacant

land (not including the Billboards) was $4.50 per square foot to $6.50 per square foot. The price per square foot over the entire 10.91 acres of the vacant land would be between $2,138,578 and $3,089,057.

¶ 15 On September 13, 2019, Plaintiff responded to the combined motion and response. Plaintiff argued that Defendants' objection to the sale failed because the $3.5 million sale price was between 54% and 64% of Defendants' valuation and was within the range that has been found adequate by Illinois courts. Plaintiff also argues the evidence Defendants submitted was insufficient to support the valuation they claimed.

¶ 16 Plaintiff's reply included a declaration from Dennis Jacobs, Plaintiff's chief credit officer. Jacobs explained that Plaintiff had calculated its $3.5 million bid by applying a 25% discount to a $4.6 million valuation of the Property. The $4.6 million valuation was based on the Shout PSA of $3.6 million for the Billboards and a $1 million estimate of the value of the vacant land. Jacobs also considered other information, including a January 2019 restricted appraisal valuing the Property at $4.35 million. Jacobs explained that the 25% discount was the result of the Property being sold in foreclosure and the Shout PSA overvaluing the Billboards because it did not account for certain facts that impaired their value. These facts included the right of the Hoffman Estates Park District (Park District) to the revenue from one of the four Billboards and the offer's condition that its foreclosure litigation be terminated.

¶ 17 Firsel also described factors impairing the value of the Property in a declaration (Firsel declaration). Firsel explained that the Shout PSA overstated the value of the Billboards because it failed to account for the Park District's interest in the Billboards, including the right to collect rent generated by one of the Billboards and the ability of the State of Illinois or the Village of Hoffman Estates (Village) to terminate the right of the Billboards' owner to lease them. Firsel also described his attempt to sell the Property to the Village for $5.5 million, but the Village rejected, stating that the Property was worth only $3 million.

¶ 18 On September 17, 2019, the circuit court confirmed the sale. The circuit court explained its analysis as follows:

> "It seems to me that the need for an evidentiary hearing is when there's a wide disparity in the value, but that's not really the case. Even if substantiated what the affiant [DeClark] said, it's still a matter of the unconscionability of the bid and I don't think it's unconscionable. So, I think it's granted on the motion."

¶ 19 On October 17, 2019, Defendants filed a motion to reconsider. In addition to re-stating issues set forth in the combined motion and response, the motion to reconsider identified two pieces of new evidence: a Valbridge appraisal concluding that the value of the Property was worth $6.3 million, and various emails involving the receiver's company and a prospective purchaser. On May 17, 2019, Jonathan Spitz, an associate of Firsel, received an offer to purchase the Property for the aggregate price of $4,273,920. Spitz responded: "Our counter is $5.4M with a 4% fee on the entire sale. The court is in receipt of a CBRE appraisal done recently at a much higher value, however—we believe that the court can be convince[ed] to approve the $5.4M number."

¶ 20 On August 27, 2019, Spitz restated his offer of $5.4 million to the prospective purchaser.

¶ 21 On November 25, 2019, the circuit court denied Defendants' motion to reconsider. This timely appeal followed.

## II. ANALYSIS

On appeal, Defendants argue that the circuit court erred by (1) confirming the sale without discovery and an evidentiary hearing and (2) denying Defendants' motion to reconsider.

Section 15-1508 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508 (West 2018)) confers broad discretion to the circuit court in approving or disapproving judicial foreclosure sales. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008). "A motion requesting confirmation of a judicial sale invokes the mandatory requirements of section 15-1508(b) ***." *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 32. Section 15-1508(b) states that the court shall confirm the sale unless it finds that (1) proper notice was not given, (2) terms of the sale were unconscionable, (3) the sale was conducted fraudulently, or (4) justice was otherwise not done. 735 ILCS 5/15-1508(b) (West 2018). The standard of review pertaining to the circuit court's order confirming sale is an abuse of discretion. *Lewis*, 229 Ill. 2d at 178.

In this case, Defendants' primary argument is that the terms of the sale were unconscionable because the $3.5 million sale price was substantially less than the $5.5 to $6.5 million range Defendants suggest is the actual value of the Property.

Courts view judicial sales as presumptively valid and place the burden on the debtor to show why the sale price is unconscionably low. *Preservation Holdings, LLC v. Norberg*, 2019 IL App (1st) 181136, ¶ 17. In the absence of mistake, fraud, or a violation of duty by the officer conducting the sale, the circuit court should not refuse to confirm a judicial sale simply because the proposed sale price is less than the fair market value of the property. *World Savings & Loan Ass'n v. AmerUs Bank*, 317 Ill. App. 3d 772, 780 (2000). "This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." *Id.* However, the circuit court abuses its discretion by confirming a sale when the sale price is "grossly inadequate" and therefore unconscionable. *CNB Bank & Trust, N.A. v. Rosentreter*, 2015 IL App (4th) 140141, ¶ 160.

To warrant an evidentiary hearing on the issue of unconscionability of the sale price, the debtor must present a " 'current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable.' " *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 264 (2008) (quoting *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993)). Defendants attached DeClark's affidavit to their combined motion and response, which was sufficient to support Defendants' valuation of the Property. After accepting the $5.5 to $6.5 million valuation, the issue becomes whether the $3.5 million sale price was unconscionably low.

Defendants stress that the sale price was unconscionable due to the difference in absolute dollars, which was $2 to $3 million less than the fair market value and left a deficiency judgment of more than $3 million. Plaintiff argues that our focus should be on the percentage of fair market value instead. While there is no rule requiring either method, properties subject to a forced sale can vary drastically in value. As such, it is common sense that a multimillion-dollar property, such as here, will result in a greater difference in absolute dollars, even if sold for a higher percentage of the fair market value, compared to a property with a lower fair market value. For instance, if a property with a $100,000 fair market value is sold for $10,000, the $90,000 difference in absolute dollars would pale in comparison to Defendants' $2 to $3

million difference. However, a sale price that is only 10% of the fair market value would likely be unconscionable. *Id.* at 265. Therefore, we find sale price as a percentage of the fair market value the more proper method for determining unconscionability.

¶ 29 There is no established percentage of fair market value below which a sale price is considered unconscionable. *Rosentreter*, 2015 IL App (4th) 140141, ¶ 160. Recent case law suggests that a sale price below 50% of fair market value is a reasonable threshold for unconscionability. *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 931-32 (1997) (finding that defendants would "suffer a severe penalty" if properties were sold for less than 50% of the fair market value); *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 915, 927-28 (1997) (holding a bid that was one-sixth of the value of the property to be an unconscionable disparity); *Fankhauser*, 383 Ill. App. 3d at 265-66 (requiring a evidentiary hearing regarding conscionability where sale price was approximately 10% of fair market value); *Rosentreter*, 2015 IL App (4th) 140141, ¶ 160 (holding that a sale price of 2.7% of fair market value was unconscionably low). Defendants have failed to identify any decision where an Illinois court has declined to confirm a judicial sale where the sale price was above 50% of the fair market value. Instead, Defendants compare the difference in absolute dollars with cases involving properties worth substantially less than the Property at issue. This is a misleading and disingenuous argument. As previously noted, sale price as a percentage of the fair market value is the more appropriate comparison. In that regard, Plaintiff purchased the Property at between 54% and 64% of Defendants' suggested fair market value. This percentage, while low, is not unconscionable.

¶ 30 Even if the sale price could be considered inadequate, that alone would be insufficient to deny the motion to confirm the sale. As stated above, mere inadequacy of price is an insufficient reason to disturb a judicial sale without some other irregularity. *World Savings*, 317 Ill. App. 3d at 780. Other than the sale price, Defendants do not allege any irregularities involving the sale process such as mistake, fraud, or a violation of duty by the officer conducting the sale.

¶ 31 Instead, Defendants argue that the sale was "unfair and prejudicial" to Defendants due to pre-auction circumstances. Specifically, Defendants argue that Plaintiff's refusal to allow a "partial sale" of the Property resulted in prejudice. In September of 2018, Defendants presented Plaintiff with the Shout PSA for the purchase of the Billboards for $3.6 million. V Shout PSA required Defendants to convey title to Billboards "free and clear of any liens and encumbrances of any nature." However, the Billboards were improvements to the Property, not a separate parcel, and Plaintiff had a single mortgage that covered the entire Property. Defendants argue that Plaintiff should have consented to the sale of the Billboards while leaving the vacant land available as an additional source of recovery. The sale could have only occurred with an easement or subdivision. The record does not demonstrate that the options of an easement or subdivision were ever presented to Plaintiff. Plaintiff declined to release its entire mortgage in exchange for the $3.6 million payment. Subsequently, at the auction, Plaintiff placed the winning bid on the Property for $3.5 million, which led to a higher deficiency judgment for Defendants. Defendants argue that this sequence of events was unfair and prejudicial. Plaintiff responds that mere disparity is not enough to establish unconscionability, the disparity in this case is within the range that Illinois courts have accepted, and the evidence Defendants presented of market value was insufficient.

¶ 32    Plaintiff could not have known when it rejected the Shout PSA that it would place the winning bid at auction or that its bid would be less than Shout's offer. Plaintiff did not prevent Shout or any other prospective purchaser from placing a higher bid at the auction. Nevertheless, no higher bidder emerged. Therefore, Plaintiff's actions cannot reasonably be described as fraudulent or an irregularity. The circuit court confirmed the sale after finding that the sale price was not unconscionable and that an evidentiary hearing was unnecessary. The court's conclusion was not an abuse of discretion.

¶ 33    Defendants also contend that the circuit court erred in denying Defendants' motion to reconsider. The " 'purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law.' " *Neighborhood Lending Services, Inc. v. Callahan*, 2017 IL App (1st) 162585, ¶ 26 (quoting *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 16 (2010)). "Newly discovered" evidence is evidence that was not available prior to the initial hearing. *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001). " 'Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.' " *Id.* (quoting *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991)). When reviewing the circuit court's denial of a motion to reconsider that was based on new matters, the standard of review is an abuse of discretion. *Callahan*, 2017 IL App (1st) 162585, ¶ 26.

¶ 34    Here, Defendants attached the Valbridge appraisal and emails regarding a potential purchase of the Property. Assuming that both pieces of evidence are newly discovered, neither justifies a new hearing. Defendants concede that the Valbridge appraisal only buttressed DeClark's conclusion as to the value of the Property. The circuit court, in its reasoning, noted that, "[e]ven if substantiated what the affiant [DeClark] said, it's still a matter of the unconscionability of the bid and I don't think its unconscionable." The circuit court, assuming DeClark's fair market valuation was correct, held that the $3.5 million sale price was not unconscionable. Submitting the Valbridge appraisal to reiterate the same valuation the court already acknowledged was superfluous and obviously would not change the outcome.

¶ 35    On May 17, 2019, Spitz received an offer to purchase the Property for approximately $4.3 million. Spitz countered with $5.4 million. Defendants argue that the exchange demonstrates the unconscionability of the sale price because Plaintiff believed the Property to be worth at least $5.4 million, but only bid $3.5 million at the auction. Defendants argue that Plaintiff wanted to ensure a windfall by having a higher deficiency judgment. We reject this argument.

¶ 36    First, even with a $5.4 million fair market value, the $3.5 million sale price represents roughly 65% of the fair market value. As explained above, that percentage would not be unconscionable. Moreover, Plaintiff is not required to bid its maximum amount or what it believes to be the fair market value, especially without any competing bids.

¶ 37    Also, Defendants' windfall argument is untenable. Throughout Defendants' brief, Defendants argue that the Property is worth at least $5.5 million. Now, Defendants contend that a $5.4 million counteroffer was somehow discouraging to the potential buyer. The counter was $100,000 less than the lowest valuation Defendants place upon the Property. It appears that Spitz unsuccessfully attempted to maximize the value of the Property, which contradicts Defendants' windfall argument. The potential buyer could have countered with a different amount or placed a $4.3 million bid at the auction, which would have been the winning offer.

Instead, he chose to do neither. These emails do not indicate fraud or unfairness to Defendants, requiring a new hearing. Therefore, the circuit court did not err in denying Defendants' motion to reconsider.

¶ 38 Finally, we address Defendants' due process argument. Defendants argue that they submitted evidence that demonstrated the unconscionability of the sale price, which the circuit court "simply did not consider." Defendants maintain that the circuit court violated Defendants' right to due process when it declined to hold an evidentiary hearing despite this evidence. We reject Defendants' argument. This court presumes that the circuit court relied only upon competent evidence in making its determination. *Epstein v. Davis*, 2017 IL App (1st) 170605, ¶ 23. There is no evidence in the record that suggests that the circuit court failed to consider Defendants' admitted evidence. Further, because we hold that the circuit court did not err by confirming the sale without an evidentiary hearing or by denying the motion to reconsider, we hold that the circuit court did not violate Defendants' right to due process.

¶ 39                                    III. CONCLUSION

¶ 40 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 41 Affirmed.