2023 IL App (1st) 220695-U

SECOND DIVISION
December 19, 2023

No. 1-22-0695

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, | ) ) ) ) ) | Appeal from the Circuit Court Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| KAREN RONEY, GUL RONEY, WEST SUBURBAN BANK AS TRUSTEE UTA DATED 10/24/94, KNOWN AS TRUST NO. 10237, | ) ) ) ) | No. 10 CH 50958 |
| Defendants-Appellants, | ) ) | |
| (Unknown Beneficiaries of West Suburban Bank as Trustee UTA DTD 10/24/94, known as Trust no. 10237, Unknown Owners and Nonrecord Claimants, | ) ) ) | Honorable |
| Defendants.) | ) ) | Joel Chupack, Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

## ORDER

¶ 1    *Held*: (1) The trial court properly granted summary judgment where defendants failed to demonstrate an issue of material fact; and (2) the trial court did not abuse its discretion in confirming the foreclosure sale because defendants failed to set forth

an exception within section 15-1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508(b) (West 2020)).

¶ 2    The mortgage foreclosure complaint was filed by the original plaintiff OneWest Bank FSB (OneWest) in December 2010, against defendants Karen and Gul Roney and West Suburban Bank as Trustee UTA Dated 10/24/94, known as trust no. 10237 (individually, the Roneys and West Suburban, respectively, and collectively, defendants). In October 2018, Wilmington Savings Fund Society, FSB, (Wilmington), as assignee of the subject mortgage and the subsequent party plaintiff, moved for summary judgment, which the trial court granted in October 2019. The court then entered a judgment of foreclosure and sale in Wilmington's favor. A foreclosure auction was held and Wilmington filed a motion to confirm the sale in January 2022. The court confirmed the sale in April 2022.

¶ 3    Defendants appeal, arguing that the trial court erred in granting summary judgment and approving the judicial sale for several reasons. Specifically, defendants contend that: (1) the original plaintiff, OneWest, did not have standing to file its complaint; (2) Wilmington did not have standing when it filed its motion for summary judgment; (3) nothing in the record shows the involvement of the Federal Deposit Insurance Corporation (FDIC) in the mortgage loan; (4) Wilmington's summary judgment prove-up was deficient; and (5) the trial court erred in approving the judicial sale.

¶ 4    In December 2010, OneWest filed a complaint to foreclose mortgage against defendants. The complaint alleged that on September 22, 2005, the Roneys, as mortgagors, executed a mortgage in the amount of $276,000.00, for the property located at 1039 Elgin Avenue in Forest Park, Illinois. The complaint stated that the Roneys had not paid the monthly payments since August 2010. The total amount due at the time of the complaint was $257,516.46, plus interest, costs, and fees. The Roneys deeded title of the subject property to West Suburban in November

2009 and West Suburban was the present owner of the subject property. The mortgage and note were attached to the complaint as exhibits.

¶ 5    The mortgage stated that Mortgage Electronic Registration Systems, Inc. (MERS) was acting as the nominee for the lender and the lender's successors and assigns. The mortgage and note indicated the lender was EverBank.

¶ 6    In November 2011, OneWest moved for the entry of a judgment for foreclosure and sale. One West attached an assignment of mortgage to the motion stating that MERS as nominee for EverBank "did hereby assign, transfer, convey without warranties and with recourse" to OneWest and its successors and assigns, "prior to 11/24/10."

¶ 7    In April 2012, the Roneys filed their answer to the complaint and alleged as an affirmative defense that they did not receive a written acceleration letter prior to the filing of the foreclosure complaint.

¶ 8    In October 2014, OneWest filed a motion to substitute the party plaintiff. The motion stated that Ocwen Loan Servicing, LLC, (Ocwen)became the holder of the note and in January 2014, OneWest Bank assigned its interests to Ocwen. The court granted the motion to substitute the plaintiff to Ocwen in January 2015. In January 2017, following the transfer of its interest in the note and mortgage, Ocwen filed a motion to substitute the plaintiff to the new holder of the note and mortgage, Wilmington. The trial court granted the motion in February 2017.

¶ 9    In February 2018, West Suburban filed its answer to the complaint and raised multiple affirmative defenses: (1) lack of standing; (2) clogging of equity of redemption; (3) failure to apply funds held in suspense account prior to foreclosure; and (4) failure to pay security for costs.

¶ 10    In September 2018, Wilmington filed a motion for summary judgment and a motion for a judgment for foreclosure and sale. Wilmington attached an affidavit of the prove-up by Connie Hawkins, a contested foreclosure specialist with Selene Finance LP, the servicer of the Roneys' loan. Hawkins stated that the amount, including the principal balance, interest, and fees, due and owing as of August 24, 2018 was $463,029.69. The records for the Roneys' note and mortgage were attached to the affidavit. In its summary judgment motion, Wilmington argued that it was entitled to summary judgment because defendants defaulted under the terms of the note and mortgage by failing to make the monthly mortgage payments. In July 2019, Wilmington filed an updated affidavit of the prove-up by Korey Rudd, the "team lead foreclosure" for Selene Finance LP. Rudd stated that the amount, including the principal balance, interest, and fees, due and owing as of June 21, 2019 was $478,794.31.

¶ 11    In August 2019, defendants filed their response in opposition to Wilmington's motion for summary judgment and for judgment of foreclosure. Defendants raised multiple arguments in opposition, including a contention that there was a genuine issue of material fact regarding Wilmington's standing. According to defendants, OneWest was not the holder of the mortgage and note when the complaint was filed, and thus, lacked standing to file the foreclosure action. Wilmington filed its reply in support of its summary judgment motion in September 2019. In October 2019, the trial court found that no material issue of fact had been raised and granted summary judgment in favor of Wilmington and against defendants. The trial court also entered the judgment for foreclosure and sale of the subject property. Additionally, the court entered a default order against the unknown owners and non-record claimants and dismissed unknown beneficiaries of West Suburban.

¶ 12    In October 2019, defendants filed a motion to reconsider the orders for summary judgment and for the judgment of foreclosure and sale. Defendants contended that Wilmington failed to carry its burden on summary judgment because there was a genuine issue of material fact regarding Wilmington's standing. Defendants also asserted an evidentiary issue related to Hawkins's affidavit for the prove-up because she stated the amounts were due and owing as of August 24, 2018, but the affidavit was signed and notarized on August 13, 2018. Wilmington filed its response in November 2019 and maintained that the motion to reconsider reasserts its previous arguments and improperly raised new claims for the first time. The trial court denied defendants' motion to reconsider in December 2019.

¶ 13    In January 2020, Wilmington filed a notice of a public sale to occur on February 3, 2020. In November 2021, Wilmington filed its motion for an order approving report of sale and distribution and requested an eviction and a personal deficiency judgment against the Roneys. The report of sale and distribution stated that Wilmington placed the highest bid of $185,000 on the subject property. The report also stated that the sale resulted in a deficiency of $326,607.46, which was the amount requested by Wilmington for the personal deficiency judgment. Defendants filed their response in January 2022, raising several arguments including Wilmington's lack of standing, and their pending complaint with the Consumer Finance Protection Bureau (CFPB). Wilmington filed a reply, defendants filed a sur-response, and Wilmington filed a sur-reply. In their sur-response, defendants argued for the first time that the terms of the sale were unconscionable and unjust because the subject property sold for 65% of the property's appraised value and failed to include a contiguous parcel of land. Wilmington maintained in its sur-reply that the appraisal included the additional parcel of land and the sale price complied with applicable law and was not unconscionable.

¶ 14    In April 2022, the trial court entered its order approving the report of sale and confirming the sale, an eviction order, and an order for a personal deficiency judgment against the Roneys.

¶ 15    This appeal followed.

¶ 16    On appeal, defendants argue that the trial court erred in granting summary judgment and entering the order approving the sale because: (1) OneWest lacked standing when the foreclosure action was filed; (2) Wilmington lacked standing when the motion for summary judgment was filed; (3) Fannie Mae was the owner of the subject loan from 2005 to 2016; (4) the summary judgment prove-up was deficient; (5) the record fails to show the FDIC's involvement in the subject loan; (6) the sale price was well below the appraised value and was unjust; and (7) defendants had pending complaints with the CFPB and the Office of the Comptroller of the Currency (OCC) and were prejudiced by the court's order approving the sale. We address each contention in turn.

¶ 17    Defendants first contend that OneWest lacked standing to file the complaint in December 2010. Wilmington maintains that OneWest set forth a *prima facie* case for its standing and right to foreclose when it attached the note and mortgage to the complaint.

¶ 18    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). We review cases involving summary judgment *de novo. Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 19    While a "plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual

basis that would arguably entitle the party to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact." *Purtill v. Hess*, 111 Ill. 2d 229, 240-41 (1986).

¶ 20    "The doctrine of standing requires that a party have real interest in the action and its outcome." *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 12 (citing *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004)). A party's standing to sue must be determined as of the time the suit is filed. *Id.* "An action to foreclose upon a mortgage may be filed by a mortgagee, or by an agent or successor of a mortgagee." *Id.* Attaching a copy of the note is to the complaint is "itself *prima facie* evidence that the plaintiff owns the note." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24. Defendant has the burden of pleading and proving the plaintiff's lack of standing. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 24.

¶ 21    In an effort to meet their burden of showing that the assignment to OneWest did not take place until after the foreclosure complaint was filed, defendants initially point to: (1) the date the assignment was notarized; (2) the use of present tense in the language of the assignment; and (3) an answer by a later named plaintiff in an interrogatory. In a supplemental brief, defendants further assert for the first time that (1) EverBank had previously assigned the mortgage to IndyMac, and (2) Fannie Mae was the owner of the subject loan from September 2005 to April 2016.

¶ 22    "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). The theory on which a claim is tried in the trial court cannot be changed on review. *Id.*

"Allowing the defendant to change his theory of defense on appeal would 'not only weaken the adversarial process and our system of appellate jurisdiction', but also prejudice the plaintiff", who may have been able to discredit the theory by presenting evidence in the trial court. *Id.* (quoting *Daniels v. Anderson*, 162 Ill. 2d 47, 59 (1994)). Since defendants did not raise the additional arguments regarding standing in the trial court, they have forfeited these arguments on appeal. Forfeiture aside, defendants have failed to satisfy their burden of proof to show a lack of standing under any of these grounds.

¶ 23    "Under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2006)), the mortgagee, or the lender, is defined as the holder of an indebtedness secured by a mortgage or one claiming through a mortgagee as a successor (735 ILCS 5/15-1208 (West 2006))." *Bayview Loan Servicing, L.L.C. v. Nelson*, 382 Ill. App. 3d 1184, 1187-88 (2008). "Illinois courts have long held that a mortgage assignment may be oral or written." *Rosestone*, 2013 IL App (1st) 123422, ¶ 25. "Even when a written assignment exists, it may be a mere memorialization of an earlier transfer of interest." *Id.*

¶ 24    Here, the assignment of mortgage states:

> "For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned, Mortgage Electronic Registration Systems, Inc., AS NOMINEE FOR EVERBANK, its successors and/or assigns (hereinafter M.E.R.S., INC.), did hereby assign, transfer, convey without warranties and without recourse; set over and deliver to ONEWEST BANK, FSB (hereinafter called the Assignee), its successors and assigns, prior to 11/24/10" the mortgage for the subject property.

The assignment was notarized on October 4, 2011.

¶ 25    Defendants have only shown that the assignment was documented on October 4, 2011. Their contention that the assignment itself is evidence that OneWest did not receive an interest in the subject mortgage until October 2011 is not supported by the plain language of the assignment, which explicitly stated that the mortgage was assigned prior to November 24, 2010. We also reject defendants' argument that the language of this assignment was written in the present tense and is ambiguous with the date occurring prior to November 24, 2010. According to defendants, nothing in the record "disputes the fact that the said assignment was signed and recorded after this case was filed." This is a circular argument and the written instrument itself established that the assignment occurred prior to the initiation of the foreclosure action. Moreover, the assignment was written in the past tense wherein MERS "did hereby assign, transfer, convey" to OneWest the mortgage to the subject property "prior to" November 24, 2010. Defendants' quotation of the assignment to assert the use of present tense failed to include the past tense verb "did," which established that the assignment occurred previously as shown by the inclusion of the past date. Defendants do not challenge the validity of this assignment, and offer no evidence, other than their own assertions, to contradict the fact that OneWest had an assigned interest in the mortgage and note as of the filing of the complaint. We reject defendants' arguments regarding the language of the assignment and find they fail to support their standing claim.

¶ 26    Defendants also assert that an interrogatory answer, along with the alleged ambiguity in the assignment, established a question of material fact. They raise this claim in a single sentence, "In fact, the Plaintiff stated in its interrogatory answer that OneWest Bank "became holder of the Mortgage and Noted at the date of closure, October 4, 2011, well after it filed its complaint in this case." Defendants do not city any authority to support its argument that an interrogatory

9

answer controls over the plain language of an exhibit. Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). It is well settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Absent any reasoned argument and citation to relevant authority, defendants forfeited this claim.

¶ 27    Nevertheless, we reject defendants' claim that this interrogatory answer created an issue of material fact. The interrogatory question and answer at issue stated:

> "17. State the date that ONEWEST Bank, FSB, became the holder (owner) of the Mortgage/Deed of Trust and Note.
>
> **ANSWER:** *Plaintiff states that ONEWEST BANK, FSB became holder of the Mortgage and Note at the date of closure, October 4, 2011 and directs Defendants to the Assignments of Mortgage attached hereto as **Exhibit Bl.**"*

¶ 28    This answer directed defendants to the assignment itself, which as discussed showed that the assignment was made prior to November 24, 2010. Rule 213(e) permits a party to respond to an interrogatory by producing documents responsive to the interrogatory. Ill. S. Ct. R. 213(e) (eff. Jan. 1, 2018). We also note the interrogatories were not answered by OneWest, but rather by Ocwen, who was the party plaintiff from January 2015 to January 2017.

¶ 29    Further, defendants raised this argument before the trial court during the summary judgment proceedings. The court rejected this argument.

> "On the standing issue, I do not deem the ambiguous answer and unequivocal

answer to – or rather the ambiguous and equivocal answer to the interrogatory to be a judicial admission by the defendant -- by the plaintiff, rather. At best, it's an evidentiary admission. But the document itself, which is the core, which is relied upon by the parties clearly indicates that the assignment was pre foreclosure, and the October 2011 date is merely the date of the creation of a memorialization and the recordation of the post transfer -- or rather the memorialization of the pre foreclosure transfer.

So I find that lacks merit, and in all other respects the plaintiff's argument makes it clear how the plaintiff has standing and therefore I find plaintiff has standing."

¶ 30    We reach the same conclusion. The language of the assignment clearly established that it was a memorialization of the prior transfer, which occurred prior to November 24, 2010. The answer to the interrogatory does not change the plain language of the assignment itself. See *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18 (Where an exhibit contradicts the allegations in a pleading, the exhibit controls). Accordingly, this claim lacks merit.

¶ 31    As noted above, defendants' contention that Everbank, the initial note holder, assigned the mortgage to IndyMac in January 2006, is being raised for the first time on appeal. In support, defendants cite multiple pages in the record on appeal. However, these citations are to the same five pages appended to the affidavits for the prove up of the amounts due and owing on the mortgages. These pages are copies of the payment history from 2006 to 2009, which list "INDYMAC BANK HOME LOAN SERVICING" on the records from 2006 to 2007, "INDYMAC FEDERAL BANK HOMELOAN SERVICING" in 2008, and "IndyMac MTG SVCS, A DIV OF ONEWEST BANK" on the records from 2009. Based on these servicing

records, defendants conclude that the assignment to OneWest was invalid because EverBank had no interest to assign. Again, defendants failed to support this conclusion with the citation to any relevant authority on this point and has been forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Forfeiture aside, none of these records indicate that IndyMac had been assigned the note and mortgage. Rather, the records merely show that IndyMac was servicing the loans from 2006 to 2009. We note that a loan servicer can be a separate entity from the mortgage holder. See *CitiMortgage, Inc. v. Moran*, 2014 IL App (1st) 132430, ¶ 41 (recognizing that Illinois law allows the loan servicer to be the foreclosure plaintiff on behalf of the lender or actual mortgage holder). Thus, defendants failed to demonstrate that IndyMac was the holder of the note and mortgage after EverBank.

¶ 32     Moreover, we point out that additional payment records from January 2010 to May 2012 list OneWest as the servicer, which further supports OneWest's interest in the note and mortgage when the complaint was filed in December 2010. Accordingly, defendants' argument is without merit.

¶ 33     Defendants next argue for the first time on appeal that OneWest lacked standing because Fannie Mae was the owner of the loan from 2005 to 2016. In support of this claim, defendants cite multiple pages in the record. The first page is a copy of the note stating that the lender is EverBank and in the top right corner it lists "MIN" with a number. The second page appears to have portions of multiple documents, including a credit report and a mortgage interest statement, and is partially illegible due to a dark and patterned background. The top of the page indicates the name of credit bureau TransUnion and appears to be a portion of Gul Roney's consumer credit report from December 2011. It lists OneWest as a creditor for a conventional real estate loan. Under "mortgage info," the page lists "Fannie Mae ID" with a number and then an account

number. According to defendants, these documents establish that Fannie Mae was the holder of the loan from its origination because the MIN number is the same number shown in the Fannie Mae ID. Defendants also point to another darkened page from a consumer credit report for Gul Roney from 2007 which listed "Everhome Mortgage Co." and stated collateral as Fannie Mae with the number redacted. Defendants further assert that the EverBank and all the institutions named in the assignments were servicers, not owners, of the note and mortgage. In support, they refer to Hawkins's affidavit in which she stated that Ocwen and OneWest were prior servicing agents. Hawkins's affidavit does not refer to Fannie Mae or EverBank. She also did not discuss the holder of the note and mortgage through any past assignments. However, none of these documents clearly demonstrate that Fannie Mae owned the note and mortgage.

¶ 34    Moreover, even if Fannie Mae was the holder of the note and mortgage, which we do not find, OneWest would still have had standing to file the foreclosure complaint. As noted above, Illinois law allows the loan servicer to be the foreclosure plaintiff on behalf of the lender or actual mortgage holder. *CitiMortgage, Inc. v. Moran*, 2014 IL App (1st) 132430, ¶ 41; see *OneWest Bank FSB v. Cielak*, 2016 IL App (3d) 150224, ¶ 30 (recognizing that the plaintiff had two bases for standing to foreclose as both the holder of the note and servicer of the mortgage). Since OneWest would have had standing as the servicer of the mortgage, defendants' standing argument fails.

¶ 35    Next, defendants assert that Wilmington lacked standing when it filed its summary judgment motion. According to defendants, the trial court erred in granting Ocwen's motion to substitute the party plaintiff to Wilmington because Ocwen had already transferred its interest before the motion was filed. Defendants refer to Ocwen's motion to substitute the party plaintiff and its exhibits. The exhibits stated that on June 2, 2015, Ocwen assigned the subject mortgage

to Federal National Mortgage Association, and on April 8, 2016, Federal National Mortgage Association assigned its interest in the mortgage to Wilmington. Again, defendants have not cited any authority to support their claim. As previously stated, a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff*, 194 Ill. App. 3d at 155-56; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Absent any reasoned argument and citation to relevant authority, defendants forfeited this claim.

¶ 36    Forfeiture aside, defendants' standing argument lacks merit. Section 2-1008(a) of the Code of Civil Procedure provides:

> "If by reason of marriage, bankruptcy, assignment, or any other event occurring after the commencement of a cause or proceeding, either before or after judgment, causing a change or transmission of interest or liability, or by reason of any person interested coming into existence after commencement of the action, it becomes necessary or desirable that any person not already a party be before the court, or that any person already a party be made party in another capacity, the action does not abate, but on motion an order may be entered that the proper parties be substituted or added, and that the cause or proceeding be carried on with the remaining parties and new parties, with or without a change in the title of the cause." 735 ILCS 5/2-1008(a) (West 2020).

¶ 37    Section 2-1008 explicitly "provides that a change of interest will not cause the action to abate. Upon motion a party may be added and the action will be carried on from that point." *C.L. Maddox, Inc. v. Royal Insurance Co. of America*, 208 Ill. App. 3d 1042, 1059 (1991). "The

14

timing of the motion to substitute parties or the opposing party's awareness thereof also do not abate the action when the original party held the interest at the action's commencement and a motion to substitute parties is filed to negate the opposing party's possible argument of surprise." *Aurora Bank FSB v. Perry*, 2015 IL App (3d) 130673, ¶ 33. Under section 2-1008(a), the substitution of the party plaintiff from Ocwen to Wilmington was proper and Wilmington had standing to file the motion for summary judgment.

¶ 38     Defendant next contends for the first time on appeal that there is nothing in the record documenting the FDIC's involvement in the subject loan. As discussed above, this claim has been forfeited. Further, defendants again fail to cite any authority to support this claim. Again, as cited above, a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal.  *Wasleff*, 194 Ill. App. 3d at 155-56; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 39     Here, defendants raise this claim in a single paragraph and point to an affidavit from Gul Roney before concluding that there was an issue of material fact. In his affidavit in support of defendants' motion to reconsider the summary judgment and judgment of foreclosure and sale, Gul Roney stated that on or about July 2008, the FDIC was appointed as the receiver for IndyMac for all deposits, including mortgage loans. He also stated in the affidavit that there were genuine issues of material facts regarding various assignments not recorded with the Cook County Recorder of Deeds. However, as previously discussed, "Illinois courts have long held that a mortgage assignment may be oral or written." *Rosestone*, 2013 IL App (1st) 123422, ¶ 25. "Even when a written assignment exists, it may be a mere memorialization of an earlier transfer of interest." *Id*. Thus, there is no requirement that any assignment to the FDIC as the receiver

15

was required to be recorded. Defendants have not offered any argument beyond their own conclusion as to how this created a genuine issue of material fact. Accordingly, this claim is without merit.

¶ 40     Next, defendants argue that Hawkins's affidavit was deficient because she stated the amounts due and owing were as of August 24, 2018, but the affidavit was notarized on August 13, 2018. They contend that this "discrepancy, on its face, created an issue of material fact." The only authority cited by defendants in support is the general standard for this court to review summary judgment orders. This is insufficient to support this claim and violates Rule 341(h)(7). A contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff*, 194 Ill. App. 3d at 155-56; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 41     Moreover, as Wilmington observes, Hawkins's affidavit provided supporting documentation and business records to establish what the amount would be as of August 24, 2018, based on the set per diem interest. Hawkins specifically stated in her affidavit that interest continued to accrue "at the rate of $35.60 per diem." Notably, defendants have not asserted that the amounts attested to by Hawkins were inaccurate. Further, Wilmington filed an updated affidavit of the prove-up by Korey Rudd, the "team lead foreclosure" for Selene Finance LP, notarized on June 24, 2019. Rudd stated that the amount, including the principal balance, interest, and fees, due and owing as of June 21, 2019 was $478,794.31. Thus, any error in Hawkins's affidavit was corrected by the updated affidavit and no issue of material fact existed.

¶ 42     Next, defendant argues that the trial court abused its discretion in approving the sale of the subject property. Specifically, defendants contend that (1) the subject property sold for

materially less than fair market value, and (2) they were prejudiced by the court's approval order because they had complaints pending with the OCC and CFPB. Wilmington maintains that the trial court properly exercised its discretion in approving the sale.

¶ 43    Section 15-1508(b) of the Illinois Mortgage Foreclosure Law (IMFL) (735 ILCS 5/15-1508(b) (West 2020)) addresses the judicial sale and confirmation of sale of a property. "After a judicial sale and a motion to confirm the sale has been filed, the court's discretion to vacate the sale is governed by the mandatory provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18. Section 15-1508(b) provides, in relevant part, that the circuit court "shall" enter an order confirming the sale unless (i) a notice required in accordance with subsection (c) of section 15-1507 was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) "justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2020). "Courts view judicial sales as presumptively valid and place the burden on the debtor to show why the sale price is unconscionably low." *T2 Expressway, LLC v. Tollway, L.L.C.*, 2021 IL App (1st) 192616, ¶ 26. We review a trial court's decision approving a judicial sale for an abuse of discretion. *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 57 (citing *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008)).

¶ 44    Here, defendants contend that the terms of the sale were unconscionable under section 15-1508(b) because the subject property sold for less than 50% of its fair market value. "In the absence of mistake, fraud, or a violation of duty by the officer conducting the sale, the circuit court should not refuse to confirm a judicial sale simply because the proposed sale price is less than the fair market value of the property." *T2 Expressway*, 2021 IL App (1st) 192616, ¶ 26. "This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgment that property does not bring its full value at forced

17

sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." *World Savings & Loan Association v. Amerus Bank*, 317 Ill. App. 3d 772, 780 (2000). "Inadequacy of sale price is not a sufficient reason, standing alone, to deny confirmation of a judicial sale." *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 20. "When there is no fraud or other irregularity in the foreclosure proceeding, however, the price at which the property is sold is the conclusive measure of its value." *Id.* There is no established percentage of fair market value below which a sale price is considered unconscionable. *T2 Expressway*, 2021 IL App (1st) 192616, ¶ 29. "To warrant an evidentiary hearing on the issue of unconscionability of the sale price, the debtor must present a ' "current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable." ' " *Id.* (quoting *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 264 (2008), quoting *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993)).

¶ 45    Here, the subject property was sold at auction for $185,000 to Wilmington. In its motion to confirm the sale, Wilmington attached an asset valuation of the subject property indicating a "probable sale price" of $285,000. Defendants assert that this valuation failed to include the value of the attached land lot because the valuation only listed one PIN, but the subject property has two PINs. According to defendants, the valuation had a separate value for the single lot for $95,000, which made the entire property value $380,000. Defendants did not provide any additional evidence regarding the appraisal value of the subject property at the time of the sale.

¶ 46    Wilmington responds that defendants' valuation is premised on a misreading of the valuation presented to the trial court. We agree. While the first page of the appraisal only listed one PIN, the appraisal referred to the common street address of the property, 1039 Elgin Avenue, Forest Park, Illinois. Wilmington also notes that the appraisal references the detached garage,

which is situated on the allegedly omitted parcel. The appraisal also lists the lot size as 7,253 square feet. The tax information in the appraisal includes the PINs for both parcels and lists the subject property as lots 10 and 11. Further, Wilmington attached the tax details for both lots to its sur-reply to its motion to approve the sale. These documents include the tax details for each of the associated PINs. The first PIN, 15-13-422-030-0000, lists the square footage as 3,100. The second PIN, 15-13-422-031-0000, lists the square footage as 4,132. Thus, the total for both lots equals 7,232 square feet, which is nearly the same as the total listed on the appraisal. Thus, the appraisal clearly included both parcels in its appraisal of $285,000. Since defendants failed to provide any rebuttal evidence to demonstrate the property was worth more than the appraised value, they have not sustained their burden to show that the sale price was unconscionable. Since the subject property sold for approximately 65% of the appraised value, it was not unconscionable. See *T2 Expressway*, 2021 IL App (1st) 192616, ¶ 29 (observing that while there is no established percentage of fair market value below which a sale is unconscionable, recent caselaw suggests that a sale price below 50% of the fair market value is a reasonable threshold for unconscionability).

¶ 47    Finally, defendants contend that the sale was unjust because there were pending complaints with the OCC and CFPB when the sale was approved. Both complaints alleged that Selene Finance and Wilmington had made several false statements regarding the owner and servicer of the subject loan. According to defendants, they were prejudiced by the court's order because the agencies "have ceased all communications" with defendants after the sale was approved. Wilmington responds this claim is not a basis to refuse to confirm the sale under section 15-1508 (b). We agree.

¶ 48    "[O]nce a motion to confirm the sale under section 15-1508(b) has been filed, the court

has discretion to see that justice has been done, but the balance of interests has shifted between the parties. At this stage of the proceedings, objections to the confirmation under section 15–1508(b)(iv) cannot be based simply on a meritorious pleading defense to the underlying foreclosure complaint." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 25. "The justice clause does not give the court the ability to exercise 'untrammeled judicial discretion.' " *NAB Bank*, 2013 IL App (1st) 121147, ¶ 17 (quoting *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 10238 (7th Cir. 2006)). "The 'justice clause' provides a narrow window through which courts can undo sales because of serious defects in the actual sale process, and not because of alleged errors in the process leading up to the underlying judgment." *Id.* ¶ 19.

¶ 49 Again, defendants have not cited any authority to support their claim that pending complaints with government agencies would justify the court's refusal to confirm the sale under the justice clause of section 15-1508(b)(iv) (735 ILCS 5/15-1508(b)(iv) (West 2020)). As previously stated, a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff*, 194 Ill. App. 3d at 155-56; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, defendants have forfeited this claim.

¶ 50 Forfeiture aside, defendants' contention fails to fall within the "narrow window" allowed by the justice clause. The First Division of this court in *NAB Bank* reviewed several cases in which this exception was utilized.

> "[A] review of the dozen or so foreclosure cases involving the 'justice' clause
> provides a framework. There is only a handful of reported cases where a court

vacated a sale under the justice clause, and almost all of them did so because of an unconscionable sale price, which is a separately listed basis on which a court can decline to confirm a sale. See, *e.g., JP Morgan Chase Bank v. Fankhauser,* 383 Ill. App. 3d 254, 265-66 (2008) (requiring evidentiary hearing regarding conscionability of sale price); *Commercial Credit Loans, Inc. v. Espinoza,* 293 Ill. App. 3d 915, 927-28 (1997) (holding that the bid at a sheriff's sale that was one-sixth of the value of the property was an unconscionable disparity); *Merchants Bank v. Roberts,* 292 Ill. App. 3d 925, 931 (1997) (vacating sale based not only on unconscionable price but also on credible argument that wrong parcel was sold). Cases where courts vacated sales based on the justice clause, but not simply because of a low sale price, share the common theme of errors relating to the actual sale process: *Fleet Mortgage Corp. v. Deale,* 287 Ill. App. 3d 385, 390 (1997) (vacating sale that should have been cancelled but was nonetheless held because of a clerical error); *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois,* 269 Ill. App. 3d 293 (1995) (refusing confirmation of sale because unfairness was shown which was prejudicial to an interested party); *New Century Mortgage Corp. v. Pinto,* No. 01 C 1075, 2002 WL 31455969, *1-2 (N.D.Ill. Oct. 30, 2002) (vacating sale due to significant error in title search affecting marketability of title)." *NAB Bank*, 2013 IL App (1st) 121147, ¶ 18.

¶ 51    Nothing in this case law suggests that pending complaints with government agencies would warrant an exception under the justice clause. Moreover, this court observes that both complaints were filed well into the foreclosure process. The CFPB complaint was filed in December 2021 and the OCC complaint was filed in April 2022, nearly five months after

Wilmington filed its motion for an order approving the sale. Defendants have not provided any support that these pending complaints would warrant an indefinite delay on the approval of the sale. Since neither of defendants' claims fall within an exception under section 15-1508(b), the trial court did not abuse its discretion in approving the sale of the subject property.

¶ 52    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 53    Affirmed.